**UNITED STATES, Appellee,**

v.

**Larry F. PEARCE, Sergeant, U.S. Army, Appellant.**

**No. 55,347.**
**SPCM 19010.**

U.S. Court of Military Appeals.

Sept. 30, 1988.

For Appellant: *Captain John J. Ryan* (argued); *Colonel Brooks B. LaGrua, Lieutenant Colonel Joel D. Miller, Major Jerry W. Peace* (on brief); *Lieutenant Colonel Arthur L. Hunt* and *Lieutenant Colonel Charles A. Zimmerman.*

For Appellee: *Captain Cynthia M. Brandon* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Byron J. Braun* (on brief).

_____

*Opinion of the Court*

COX, Judge:

Appellant was tried by a special court-martial composed of officers and enlisted members for larceny and housebreaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 930, respectively, and was convicted as

charged, contrary to his pleas. He was sentenced to a bad-conduct discharge, confinement for 6 months, forfeiture of $200 pay per month for 6 months, and reduction to E-1. The convening authority approved the sentence. Later, the confinement was suspended. The Court of Military Review affirmed. 21 M.J. 991 (1986).

Appellant's petition to this Court was granted to consider:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ALLOWING TRIAL COUNSEL TO ASK A DEFENSE WITNESS ABOUT AN INVESTIGATION AT A PRIOR POST CONCERNING APPELLANT.

The facts pertaining to the granted issue are these: One of the prosecution witnesses, Staff Sergeant John J. Hamilton, had worked for appellant briefly several years earlier at Fort Lewis, Washington. On cross-examination, defense counsel asked Sergeant Hamilton:

Q. How long have you known the accused?

A. I knew him at Fort Lewis, Washington; probably two and a half years.

Q. And during that time, were you a member of his unit?

A. Yes, sir.

Q. And in your opinion—do you have an opinion about his honesty?

A. He has always been honest. I worked for him for a couple of months.

On redirect, trial counsel developed the brevity of that relationship -about two or three months—and that the witness' basis for his opinion was merely that he "had no reason to doubt ... [appellant's] honesty."

Trial counsel was also aware that, during the time frame in which the witness was ostensibly vouching for appellant's honesty, appellant had been "titled" as the "suspect" in a larceny investigation. The report of this investigation was attached to the record of trial as an appellate exhibit and the contents were made known to the military judge out of the presence of the court members. According to the documents in the report, the theft occurred shortly before appellant made a permanent-change-of-station (PCS) move from the unit, and it involved tires and rims removed from another servicemember's private automobile. The stolen property was discovered during an inventory of the unit "CBR" room over which appellant had semi-exclusive control; the tires were "located underneath a large stack of CBR suits on the bottom shelf of a home-built shelf located in the CBR Room"; and appellant's fingerprints were all over the stolen property.

In what is purported to be a sworn, written statement, appellant (already a sergeant at the time) denied having knowledge of how the items came to be in the CBR room, but he admitted moving them around several times in connection with cleaning the room. His statement does not explain why he permitted the property to remain in the room, and it does not assert that he or anybody else made any effort to inform higher authorities of the presence of the items. Apparently due to appellant's impending PCS and the fact that a few others had access to the room, appellant was not formally charged with an offense at that time.

Armed with the foregoing material, trial counsel sought to challenge the basis for Staff Sergeant Hamilton's opinion that appellant was an honest person. During a hearing out of the presence of the members, the defense objected to the questions about the witness' knowledge of the Fort Lewis incident "on the grounds of Rule 403 and Rule 404 as far as uncharged misconduct goes and it's the defense's position that it is not a proper question under Rule 405."

After reviewing the report and hearing the positions of counsel, the military judge permitted trial counsel's challenge to the witness' basis of knowledge. The judge announced his reasons as follows:

Well, I believe that the Government is relying under 405a, last sentence, on

cross-examination, where he is liable. It's relevant to specific instances of conduct. So, I'm going to balance that against Rule 403 and it appears that his basis of knowledge is a relevant factor for the court members to consider. It appears that counsel has a reasonable basis for asking the question and therefore, I am going to let him ask the question. So, you [apparently referring to trial counsel] might question the witness about the basis of his opinion, but concerning this MP Report, you would just have to ask him whether or not he was aware that he was a suspect in a larceny of ah—the possible larceny of tires of an automobile or something very general, and of course, we will assume that he will answer no and then you will be stuck with his answer.

Pursuant thereto, the following exchange occurred between trial counsel and the witness:

Q. Now, when you were at Fort Lewis, were you aware of the fact that Sergeant Pearce, the accused today, was a suspect and was under investigation by the CID for the larceny of four tires and other items from a Buick Regal, the replacement value of which was approximately $950.00?

A. No, sir, I do not.

Q. Okay. You weren't aware of that?

A. No, sir.

The military judge immediately gave a limiting instruction as to the purpose and use of the questions and answers. Later, the defense introduced the stipulated testimony of two witnesses to the effect that appellant was an honest person and would not steal.

1. Defense counsel specifically asserted such a theory in final argument on the merits. Further, the evidence could not have been proffered to bolster appellant's character for truthfulness because Mil.R.Evid. 608(a)(2), Manual for Courts-Martial, United States, 1969 (Revised edition), forbids such bolstering until after a witness' character for truthfulness has been attacked, and that had not yet occurred.

Generally, "[e]vidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion ...." Mil.R. Evid. 404(a), Manual for Courts-Martial, United States, 1969 (Revised edition). One of the principal exceptions to this rule, however, is that the accused may introduce "[e]vidence of a pertinent trait of the character of the accused" to show that he was not the sort of person who would commit such a crime, and the prosecution may then rebut in kind. Mil.R.Evid. 404(a)(1). Though not articulated at trial, it is clear that the defense elicited Staff Sergeant Hamilton's opinion for this purpose.[1]

Even though a trait of character is admissible, the form that evidence may take is prescribed by Mil.R.Evid. 405, "Methods of Proving Character." Mil.R.Evid. 405(*a*) provides:

> *Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

Under this provision, the defense was limited initially to proving appellant's character through reputation or opinion evidence. The prosecution might have countered directly with reputation or opinion evidence of the opposite sort. However, it was also permitted, under the last sentence of the rule, to challenge the basis of the defense witness' opinion with *"relevant specific instances of conduct."* (Emphasis added). *See McCormick On Evidence* 568–69 (E. Cleary 3d ed. 1984).[2] That is,

2. On this record, the Government's "cross-examination" is styled "redirect examination," since the defense opened up this line of questioning on what is styled "cross-examination." Needless to say, had it been the prosecution that introduced the reputation or opinion evidence, Mil. R.Evid. 404(a)(1), the defense could have inquired into "specific instances of conduct." Mil. R.Evid. 405(a).

the questions challenging the witness' basis "must concern conduct relevant to the character trait at bar." S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* (hereafter Evidence Manual) 382 (2d ed. 1986).

█ On one level, honesty—the trait put in issue by appellant—may refer merely to propensity to speak the truth. Thus, there may be some question whether appellant's alleged prior association with a larceny was really relevant to his honesty. However, appellant is in no position to dispute the relevance of the government attack. Since he introduced evidence of his honesty to disprove larceny, then evidence of larceny must disprove honesty. At least for the purposes of this proceeding, we conclude that the subject matter of the cross-examination was relevant.

Appellant complains, nevertheless, that the cross-examination was impermissible because it concerned events which occurred at a time when the witness had no contact with appellant. Thus, argues appellant, it did not undercut the witness' basis because the basis could only have been formed during the time the witness had contact with appellant. We answer this contention much as did the military judge and the Court of Military Review.

The rules permitting receipt of character evidence are not a license to distort. Appellant portrayed the witness as basing his opinion on the entire period, *i.e.*, "I knew him at Fort Lewis ... probably two and a half years." The impression left by the defense was that the witness knew appellant to be an honest person over the entire period. Even if the defense had been more precise in delimiting the witness' actual exposure to appellant, the implication still would have been that appellant was an honest person several years ago; he is an honest person now; therefore, he was probably an honest person in between. *Cf. United States v. Colon-Angueira*, 16 M.J. 20, 25 (C.M.A.1983). It is no ground for

3. Thus, this opinion should not be read as sanctioning impeachment by lack of knowledge of investigations, arrest, preferral of charges, etc.

complaint that the Government set the record straight.

Appellant's final argument is that the cross-examination should not have been permitted because the information implied in the question was more prejudicial than the response was probative. It was prejudicial, according to appellant, because the alleged misconduct was similar to that charged at bar. It was not probative because it involved "unsubstantiated suspicions" and "a mere investigation."

█ Initially, we agree with Chief Judge Everett, concurring here in the result, that the form of the question was improper. The fact that appellant "was a suspect and was under investigation by the CID" was not *conduct of appellant* into which cross-examination was permitted. However, this was an error of form, not substance. Unbeknownst to the members—but well known to the military judge—was the impressive body of information linking appellant to at least the concealment of, if not the actual perpetration of, the prior offense.[3] The Government abundantly established a "good faith belief that the act occurred." *Evidence Manual, supra; cf. Huddleston v. United States*, — U.S. —, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Thus, the witness should have been asked if he knew about appellant's prior misconduct.

That being so, the implication that appellant had merely been investigated for another crime was, if anything, mitigating. As everyone knows, and as appellant was free to argue to the members, the fact that someone has merely been investigated, coupled with the inferences to be drawn from the lack of further action, scarcely establishes that he is a "bad man." Many an innocent person has been investigated, merely to be exonerated.

█ Regarding appellant's claim of prejudice, Mil.R.Evid. 403 provides:

> It is the information in the prosecution's hands here that distinguishes this case.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Admittedly, the potential for undue prejudice can increase as the impeaching offense more closely approximates the charged offense. However, that was a risk undertaken by the defense in electing to present affirmative character evidence. As the United States Supreme Court observed in *Michelson v. United States*, 335 U.S. 469, 485, 69 S.Ct. 213, 223, 93 L.Ed. 168 (1948):

> [T]he law foreclosed this whole confounding line of inquiry, unless defendant thought the net advantage from opening it up would be with him. Given this option, we think defendants in general and this defendant in particular have no valid complaint at the latitude which existing law allows to the prosecution to meet by cross-examination an issue voluntarily tendered by the defense.

Moreover, we regard the responses elicited as being highly probative of the purpose for which the questions were posed. That is, they served to demonstrate that the witness' exposure to appellant was so limited that his opinion of appellant's honesty was entitled to little weight. In *Michelson*, similarly, the accused had introduced evidence that he enjoyed a good reputation for honesty and truthfulness, and for being a law-abiding citizen. The prosecution was permitted to ask the witnesses, to test the basis of their testimony, whether they had heard that the accused had been arrested many years earlier for receiving stolen goods.

Here, the military judge specifically applied the Mil.R.Evid. 403 balancing test and concluded that the question was a proper one. Inasmuch as we view the factors differently from appellant, we are not inclined to overturn the military judge's decision.

Further, we adopt the analysis of the Court of Military Review:

> That Rule 403's balancing test must be applied to "Have you heard?" or "Do you know?" questions appears indisputable. *See, e.g., Awkard [v. United States]*, 352 F.2d [641] at 643–644, [D.C.Cir.1965]; *[United States v.] Midkiff*, 15 M.J. [1043] at 1047 [NMCMR 1983]; *Military Rules of Evidence Manual, supra* at 176; *see also Michelson [v. United States]*, 335 U.S. at 480 n.17, 486, 69 S.Ct. [213] at 221 n.17, 223. In the application of this balancing test, the trial judge is universally recognized as exercising "wide discretion," which is nevertheless "accompanied by heavy responsibility ... to protect the·practice from any misuse." *Michelson [v. United States]*, 335 U.S. at 480, 69 S.Ct. at 221. This allocation of "wide discretion" to the trial judge naturally brings into play the corollary principle that his rulings in this area are to be reversed only when he has abused that discretion.

21 M.J. at 994 (1986) (footnotes omitted).

█ As did the Court of Military Review, we find no abuse of discretion in the judge's admission of the evidence for the limited purpose stated. However, even if the military judge erred, the evidence of appellant's guilt was so overwhelming on this record that he simply could not have been prejudiced by the questions.

The decision of the United States Army Court of Military Review is affirmed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring in the result):

The basis for the military judge's permitting the challenged questions of Sergeant Hamilton was Mil.R.Evid. 405(a), Manual for Courts-Martial, United States, 1969 (Revised edition). In addition, he performed the balancing exercise required under Mil. R.Evid. 403 and concluded that the questions' probative value outweighed their risk of unfair prejudice. In both respects, I disagree.

As the majority opinion notes, Mil.R. Evid. 404(a)(1) permits the defense to offer "[e]vidence of a pertinent trait of the character of the accused" and permits "the prosecution to rebut the same." Mil.R. Evid. 405(a) expressly permits such character trait to be proved "by testimony in the form of an opinion."

Pursuant to this provision, the defense elicited Sergeant Hamilton's opinion of Pearce's honesty. Thereafter, the prosecution sought to test the validity of that opinion by inquiring, over defense objection, whether, in arriving at it, Hamilton had been aware that, during the time frame in which he had known Pearce, the latter had been "a suspect and was under investigation by the CID for the larceny of four tires and other items from a Buick Regal, the replacement value of which was approximately $950.00."

The authority claimed by the Government and relied upon by the military judge in permitting this question was the second sentence of Mil.R.Evid. 405(a), which states: "On cross-examination, inquiry is allowable into relevant *specific instances of conduct.*" (Emphasis added.) My concern is whether Pearce's having been under investigation by the CID for a larceny several years earlier is a "specific instance[ ] [of] conduct" of Pearce so as to allow prosecution inquiry about it.

Logically, the fact that someone is a suspect in another's mind is not an act of the suspect. In other words, B's suspecting A is B's "conduct" and not A's. In *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), on which the majority opinion relies, the Supreme Court allowed a defense character witness to be asked whether the defendant had been "arrested for receiving stolen goods." *Id.* at 472, 69 S.Ct. at 216. However, it must be recalled that *Michelson* arose decades before the Federal Rules of Evidence were adopted; and, at that time, a character witness could only testify concerning the *reputation* of the accused, rather than the witness' own opinion of the accused's character.[1]

If a witness is testifying about a defendant's reputation, there is logical relevance to whether he has heard reports about the defendant's arrest. For one thing, if the report is circulating widely, then it tends to disprove the witness' testimony as to good reputation. Secondly, if the circumstance of arrest is well known in the community but the witness does not know about it, then it appears that his knowledge of the accused's reputation is poor. Thus, neither the logic nor the result in *Michelson* applies in this case, where Hamilton did not purport to be testifying as to "reputation" but only as to his own opinion of Pearce's character.

Furthermore, inquiry into an *arrest*—as in *Michelson*—or into an indictment or a conviction is a far cry from inquiry into someone's merely being under investigation for a crime. Very little information is required for one to become a "suspect"; and there is no requirement of probable cause, as there would be for an arrest.[2] When a question is posed under Mil.R.Evid. 405 in the form, "Did you know that the accused once was a suspect of ....," or, "Did you know that the accused once was under investigation for ...," it is tantamount to character assassination by rumor and implication.

---

**1.** Interestingly, long before *Michelson*, military law allowed a witness to give his own opinion as to an accused's character rather than to testify only as to reputation. Probably, this was because Dean Wigmore had been the primary drafter of the chapter on evidence in the 1920 Manual for Courts-Martial and Wigmore espoused the view that a witness should be free to testify as to his own opinion of someone's character and not merely as to that person's reputation.

**2.** In determining whether a seizure is reasonable, the Supreme Court has distinguished between probable cause, which is required for an "arrest," and "reasonable suspicion," which may authorize limited seizures like a stop-and-frisk. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *accord New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Mere "suspicion" does not require any evidence.

The majority opinion suggests that "the implication that appellant had merely been investigated for another crime (as opposed to arrested, charged, convicted, etc.) was if anything, mitigating." 27 M.J. 124. I fail to understand this argument in the present context; and certainly there would be no need for "mitigation" if the question had not been asked in the first place.

This lack of awareness might have been relevant if Hamilton had expressed an opinion as to Pearce's reputation, rather than his own opinion as to appellant's character. As it was, the negative answer made it clear that the question would not lead to admissible evidence.

Even if such a question can somehow be justified within the rationale of Mil.R.Evid. 405, proper balancing under Mil.R.Evid. 403 would prohibit its being asked. As I have already mentioned, it takes so little to be merely "suspected" of a crime—possibly one of several such suspects—that the probative value of the information adduced by such a question is minimal. On the other hand, its merely being asked—especially with the detail encompassed within the question asked here—creates a high risk that the members impermissibly will draw certain inferences, consciously or subconsciously, about the accused's criminality. Indeed, the risk is implicit in *any* question asked under Mil.R.Evid. 405 or 404(b); but when the probative value in such a question is as low as it is here, the risk is unacceptable.

Although I think the questions were inappropriate, I am persuaded that the evidence properly admitted in this case was overwhelming, so I concur in affirming the decision below.