Judge EFFRON
delivered the opinion of the Court.
A special court-martial composed of a military judge sitting alone convicted appellant, contrary to his pleas, of one specification of unauthorized absence and two specifications of wrongful use of cocaine, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 USC §§ 886 and 912a, respectively. He was sentenced to a bad-conduct discharge, confinement for 68 days, and reduction to the lowest enlisted grade. The convening authority approved these results. In an unpublished opinion, the Court of Criminal Appeals modified the findings, reassessed the sentence, and affirmed only the *78 bad-conduct discharge and reduction to the lowest enlisted grade.[1]
On appellant’s petition, we agreed to review whether the evidence of appellant’s positive urinalysis provided a legally sufficient basis to sustain his conviction for wrongful use of cocaine.[2] For the reasons set forth below, we affirm.
I. FACTUAL BACKGROUND
Upon returning from a lengthy period of leave, appellant provided a urine sample for a command-directed urinalysis, the results of which were positive for the cocaine metabolite benzoylecgonine (BZE). At trial, the Government introduced evidence concerning the urinalysis. The evidence, which consisted of a laboratory report and testimony of a witness from the laboratory who appeared “as an expert in the field of forensic chemistry,” was admitted with no defense objection. The report reflected the chain of custody of the urinalysis sample and the positive result of the urinalysis.
The expert witness, a senior chemist at the Navy Drag Screening Laboratory in Jacksonville, Florida, described the laboratory’s procedures and explained the results of the urinalysis. The witness testified that there had been three tests of appellant’s sample. First, an immunoassay test was used to screen samples for seven different kinds of drags. When this yielded a positive result for BZE, a second or “rescreen” test was performed, which also yielded a positive result. The laboratory then conducted a third test, known as a “confirmation test,” using gas ehromatography/mass spectrometry (GC/MS) technology, which the witness described as “a very sophisticated state-of-the-art test that does give you a specific identification of a specimen.” The witness testified that the GC/MS analysis of appellant’s sample revealed 213 nanograms per milliliter (ng/ml) of BZE in appellant’s urine. The laboratory report noted that the reading of 213 ng/ml of BZE in appellant’s urine was “an amount greater than the DoD [Department of Defense] GC-MS cut-off standard of 100 ng/ml.”
The expert witness also stated:
The only way a person can produce a urine sample that has Benzoylecgonine is for cocaine to pass through the body. In order for that person to produce that urine sample, that person would have to use the cocaine.
When trial counsel asked whether a positive result might occur “from the use of any medications, prescription medications,” the witness replied:
To my knowledge, cocaine is not used as a prescription drag. I don’t even believe it is used in the surgical setting. It used to be used years ago. There will be no other drags that could cause a positive result for cocaine. It has to be cocaine itself. To my knowledge, the only place you can get it now is pretty much on the street clandestinely.
On cross-examination, the expert witness acknowledged that BZE could be detected through urinalysis if someone put cocaine into the sample directly, outside the body. Additionally, he testified that a reading of 213 ng/ml is “on the low end of positive results.” He added: “A lot of times we see samples of 100,000 nanograms or higher.”
*79 Although appellant did not testify, he offered a defense based on his good military character through the testimony of other witnesses. His primary contention was that it would have been illogical for a person of appellant’s character and experience to have used cocaine. The defense also raised questions about the chain of custody, a matter not at issue in the present appeal, to suggest that the urine that had tested positive for BZE belonged to someone other than appellant. He did not affirmatively claim innocent or unknowing ingestion.
II. DISCUSSION
To obtain a conviction under Article 112a for wrongful use of a controlled substance, the prosecution must prove:
(a) That the accused used a controlled substance; and
(b) That the use by the accused was wrongful.
Para. 37b(2), Part IV, Manual for Courts-Martial, United States (2000 ed.). The Manual also provides:
Knowledge of the presence of the controlled substance is a required component of [wrongful] use. Knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused’s body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the government’s burden of proof as to knowledge.
Para. 37c(10), Part IV; see also Analysis of Punitive Articles, Manual, supra at A23-12, citing United States v. Mance, 26 MJ 244 (CMA 1988); United States v. Ford, 23 MJ 331 (CMA 1987); and United States v. Harper, 22 MJ 157 (CMA 1986).
The “wrongful” element in Article 112a, which has been the source of extensive interpretative litigation, represents the considered judgment of Congress as to the nature of the offense. Because the statute does not have the clarity of a bright line rule, compare, e.g., Art. 111(2), UCMJ, 10 USC § 911(2) (making it an offense to drive with a blood alcohol level of “0.10 grams”), there has been significant litigation concerning its meaning. Harper and its progeny reflect the challenge of interpreting the statute in a manner that appropriately balances disciplinary considerations, the rights of servicemem-bers, and evolving legal standards concerning admissibility of expert evidence.
Appellant contends that the evidence in his case was insufficient to prove wrongful use, citing our opinion in United States v. Campbell, 50 MJ 154 (1999), supplemented on reconsideration, 52 MJ 386 (2000). ' The accused in Campbell was charged with wrongful use of LSD based solely upon a positive urinalysis that employed a novel scientific procedure. At trial, defense counsel moved to exclude evidence of the urinalysis and the supporting expert testimony on the grounds that the test at issue did not meet the standards of reliability required by Mil. R.Evid. 702, Manual, supra, and applicable case law. The motion was denied by the military judge, and the accused was convicted on the basis of the urinalysis results and related testimony.
On appeal, we determined that the military judge erred in admitting the LSD test results, in view of “the absence of evidence establishing the frequency of error and the margin of error in the testing process” with respect to the novel scientific procedure. 52 MJ at 388. The identification of deficiencies in the reliability of the test rendered the urinalysis evidence inadmissible and, in the absence of other evidence, resulted in reversal of the case due to insufficient evidence. This aspect of the opinion underscored the importance of a careful inquiry into the reliability of novel scientific evidence.
After addressing the issue necessary to resolve the case, our opinion in Campbell ventured beyond the issue of reliability of the methodology in an effort to provide additional guidance concerning proof in urinalysis cases. In that context, we described a three-part approach to consideration of urinalysis results. Id. In our opinion upon reconsideration, we emphasized that the three-part approach did not establish a mandatory standard. Id. We noted that other evidence explaining the test results could be admissible if it met applicable reliability and rele- *80 vanee standards for scientific and specialized knowledge with respect to providing a rational basis for inferring knowing, wrongful use. Id. at 388-89.
The court below in the present case, and in the later cases certified to us by the Judge Advocate General, conscientiously endeavored to apply the broad guidance we fashioned in Campbell. See, e.g., United States v. Barnes, 53 MJ 624 (N.M.Ct.Crim.App.2000), set aside, — MJ-(Daily Journal June 11, 2001). Our consideration of the decisions of the lower courts, however, has led to further questions concerning matters such as the relationship between admissibility of novel scientific evidence and sufficiency of proof on the merits; consideration of the permissive inference of knowing use with respect to admissibility of novel scientific evidence; the role of judicial notice; and the effect of waiver or forfeiture. These questions indicate that we should give fresh attention in the present case to the applicable principles governing litigation of urinalysis cases.
Under our case law, where scientific evidence provides the sole basis to prove the wrongful use of a controlled substance, “[ejxpert testimony interpreting the tests or some other lawful substitute in the record is required to provide a rational basis upon which the factfinder may draw an inference that [the controlled substance] was [wrongfully] used.” United States v. Murphy, 23 MJ 310, 312 (CMA 1987). The admissibility of such evidence is subject to applicable rules governing opinions and expert testimony. See, e.g., Mil.R.Evid. 702; United States v. Bush, 47 MJ 305 (1997); see also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (scientific testimony must be both reliable and relevant); General Electric Co. v. Joiner, 522 U.S. 136, 144-45, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (an expert’s opinions must be “sufficiently supported” by the “studies on which they purport[ ] to rely”); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 153-55, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (admissibility depends not only on the general reasonableness of an expert’s approach but also on the particular matter to which the expert’s testimony was directly relevant).
The military judge has broad discretion as the “gatekeeper” to determine whether the party offering expert testimony has established an adequate foundation with respect to reliability and relevance. See id. at 142, 119 S.Ct. 1167; Bush, supra at 310. The military judge, as gatekeeper, may determine in “appropriate circumstances” that the test results, as explained by the expert testimony, permit consideration of the permissive inference that presence of the controlled substance demonstrates knowledge and wrongful use. See Manee, 26 MJ at 256. In making this determination, the military judge may consider factors such as whether the evidence reasonably discounts the likelihood of unknowing ingestion, or that a human being at some time would have experienced the physical and psychological effects of the drug, but these factors are not mandatory. Compare, e.g., Harper, 22 MJ at 157, and Ford, 23 MJ at 331, with United States v. Thompson, 34 MJ 287 (CMA 1992).
In the context of the permissive inference, the military judge has discretion to determine the issue of admissibility by considering whether: (1) the metabolite is naturally produced by the body or any substance other than the drug in question; (2) the permissive inference of knowing use is appropriate in light of the cutoff level, the reported concentration, and other appropriate factors; and (3) the testing methodology is reliable in terms of detecting the presence and quantifying the concentration of the drug or metabolite in the sample. We emphasize, however, that this three-part approach is not exclusive, and the military judge as gatekeeper may consider other factors, so long as they meet applicable standards for determining the admissibility of scientific evidence.[3] Given the unique as *81 pects of drug prosecutions in the armed forces and the serious consequences of a positive urinalysis, the military judge must ensure a careful and thorough Daubert-type analysis in such cases. See, e.g., United States v. Bush, 44 MJ 646, 649-52 (A.F.Ct. Crim.App.1996), aff'd, 47 MJ 305 (1997) (describing the detailed inquiry conducted by the military judge prior to admitting evidence of novel scientific evidence testing the presence of cocaine through hair analysis).[4]
When the military judge is considering evidence of a test that does not involve a novel scientific procedure, different considerations apply. If the expert testimony has “an established scientific, technical, legal, judicial, or evidentiary foundation” regarding reliability and relevance, it may be appropriate to take judicial notice under Mil.R.Evid. 201 -without further litigation. See Stephen A. Saltzburg, et al, Military Rules of Evidence Manual 841 (4th ed.1997). Moreover, if a party fails to challenge the admissibility of expert testimony, the issue may be treated as waived, absent plain error. Mil.R.Evid. 103(a)(1) and (d); see Saltzburg, et al., supra at 840-41.
If the military judge determines that the scientific evidence — whether novel or established — is admissible, the prosecution may rely on the permissive inference during its case on the merits. A urinalysis properly admitted under the standards applicable to scientific evidence, when accompanied by expert testimony providing the interpretation required by Murphy, supra, provides a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use, without testimony on the merits concerning physiological effects. See United States v. Bond, 46 MJ 86, 89 (1997). To the extent that the prosecution, as a matter of trial tactics, includes in its case on the merits other evidence, such as testimony concerning physiological effects, it is the responsibility of the factfinder to determine what weight should be given to such evidence. Id. at 89-90.
In contrast to the accused in Campbell, appellant did not move at trial to exclude the test results or the expert testimony. This evidence, as summarized in Part I, supra, is sufficient to support the permissive inference of knowing, wrongful use. Any objection appellant may have had was forfeited, and there was no error — much less plain error — in admitting the evidence. The weight of any evidence introduced on the merits by the defense at trial was a matter for consideration by the factfinder — here, the military judge — on the question of factual sufficiency, and it did not affect the legal sufficiency of the conviction based upon the permissive inference of knowing, wrongful use.
III. CONCLUSION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

. The court dismissed one of the specifications of wrongful use of cocaine on the ground of factual insufficiency and affirmed the remaining findings of guilty. The dismissed specification was based - upon a urinalysis sample that is not at issue in the present appeal.

. We granted review of the following issues assigned by appellant:
I. "WHETHER THE LOWER COURT ERRED BY IGNORING THIS COURT’S DECISION IN UNITED STATES V. CAMPBELL, 50 MJ 154 (1999), AS BINDING PRECEDENT.
II. WHETHER APPELLANT’S CONVICTION FOR WRONGFUL USE OF COCAINE WAS FACTUALLY AND LEGALLY INSUFFICIENT BECAUSE THE PROSECUTION FAILED TO ESTABLISH THE PREDICATE FACTS NECESSARY TO SUSTAIN A PERMISSIVE INFERENCE.
III. WHETHER THE LOWER COURT'S DECISION TO AFFIRM APPELLANT’S CONVICTION FOR WRONGFUL USE OF COCAINE, WITHOUT EXPERT TESTIMONY CONCERNING THE PHYSIOLOGICAL EFFECTS, VIOLATED THE DUE PROCESS CLAUSE.

. Judge Sullivan seeks greater clarity on this important subject. As noted earlier, however, Congress has not employed a bright line rule. In view of the emphasis in this opinion on the broad discretion of the military judge as to matters that may be considered in his or her gatekeeper role *81 in assessing the relationship between expert testimony and the presumption of knowing use, this opinion does not adopt the interpretative gloss suggested in Judge Sullivan’s separate opinion.

. Judge Gierke contends that this opinion transforms Article 112a into an "absolute-liability offense,” permits a conviction based upon “the mere presence of a drug metabolite in the body,” 55 MJ at 85, and transforms the Daubert-type analysis. 55 MJ at 87. The present opinion does not adopt such a position. What the military judge must determine is whether the expert's testimony supports the matter to which it is relevant; that is, does the expert’s testimony permit reliance on a permissive inference of knowing use. See Kumho Tire, supra at 153-58, 119 S.Ct. 1167.