**UNITED STATES**

v.

**Robert L. BARNES, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCM 9401927.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 12 May 1994.

Decided 30 Aug. 2002.

**628**

LT G.G. Gerding, JAGC, USNR, Appellate Defense Counsel.

Maj S.B. Jack, USMC, Appellate Defense Counsel.

LT M.E. Eversole, JAGC, USNR, Appellate Defense Counsel.

LT Ross W. Weiland, JAGC, USNR, Appellate Government Counsel.

Maj S.P. Finn, USMC, Appellate Government Counsel.

Maj W.H. Borden, USMCR, Appellate Government Counsel.

LT M.E. Jolly, JAGC, USNR, Appellate Government Counsel.

Before OLIVER, Senior Judge, VILLEMEZ and FINNIE, Appellate Military Judges.

OLIVER, Senior Judge:

A military judge, sitting as a special court-martial, tried Appellant on 4 and 7 April and 12 May 1994. Contrary to his pleas, the military judge found him guilty of a single specification of wrongfully using marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. The military judge sentenced Appellant to be discharged with a bad-conduct discharge. The convening authority approved the sentence as adjudged.

After carefully reviewing the record of trial, Appellant's assignments of error, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was

committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Appellate History

This case is before us for the fourth time. In its first review, this Court determined that the failure of the staff judge advocate to advise the convening authority in his recommendation (SJAR) that Appellant had received the Navy and Marine Corps Commendation Medal for meritorious service in Somalia from 30 December 1992 to 26 April 1993 was plain error. We returned the record of trial to the Judge Advocate General for remand to the convening authority for a new SJAR and a new action. *United States v. Barnes,* 44 M.J. 680, 682 (N.M.Ct.Crim. App.1996). On 18 November 1996, the convening authority again approved the adjudged sentence.

In our second review, applying the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we found merit in Appellant's argument that he had been denied effective assistance of counsel in the post-trial proceedings prior to the convening authority's new action. Appellant's defense counsel had decided not to submit any clemency matters to the convening authority without ever attempting to contact Appellant. We again set aside the action of the convening authority and directed another recommendation and action. *United States v. Barnes,* No. 9401927 (N.M.Ct.Crim.App. 15 Aug 1997)(unpublished op.). On 16 October 1998, the convening authority again approved the adjudged sentence.

In the third review, following oral argument, this Court, applying the permissible-inference standards set forth in *United States v. Campbell,* 50 M.J. 154, 161 (1999)[*Campbell I*], *supplemented on reconsideration,* 52 M.J. 386, 388 (2000)[*Campbell II*], determined that the Government's evidence was legally insufficient.[1] Accordingly,

---

1. Quoting *Campbell I,* this Court listed the following three factors that we understood the Government's evidence must show to permit inferring wrongful use of an illicit substance:
   1. The metabolite is not naturally produced by the body or any substance other than the drug in question.

2. The cut-off level and reported concentration are high enough to reasonably discount the possibility of unknowing ingestion and to indicate a reasonable likelihood that the user at some time would have experienced the physical and psychological effects of the drug.

we set aside Appellant's conviction and dismissed the charge. *United States v. Barnes,* 53 M.J. 624, 628 (N.M.Ct.Crim.App.2000).

On appeal, our superior Court resolved affirmatively the issue that the Government had certified,[2] set aside our decision of 31 May 2000, and returned the record of trial for further consideration in light of its opinion in *United States v. Green,* 55 M.J. 76 (2001). *United States v. Barnes,* 55 M.J. 236, 236 (2001)(summary disposition). We now undertake that task.

### Facts

The Government's case-in-chief was based solely on the positive results of a single urinalysis test. There was no evidence presented that anyone had ever seen Appellant possess or use marijuana, and Appellant has consistently denied any such activity. During its case-in-chief the prosecution called three witnesses: a forensic chemist; the command's urinalysis coordinator; and the urinalysis observer in Appellant's test. The Government also introduced documents establishing the chain-of-custody and the positive test results.

The Government's first witness during its case-in-chief was Lieutenant Commander (LCDR) Gerald Grimsley, Medical Service Corps, U.S. Navy, the Deputy Technical Director of Naval Drug Screening Laboratory (NDSL), San Diego. LCDR Grimsley was one of three forensic chemists who reviewed positive urinalysis results at the NDSL. He testified that NDSL San Diego utilized three tests: two screening tests using a radio-immuno assay procedure and a confirmation test, the gas chromatography/mass spectrometry test.

LCDR Grimsley stated that the NDSL would report a sample as positive only if the result was at or above the Department of Defense cutoff level on each of the three tests. In the case of marijuana, the tests must establish that the sample contained at least 15 nanograms per milliliter (ng/ml) of the marijuana metabolite (THC). The test on Appellant's sample resulted in a reading of 19 ng/ml. LCDR Grimsley testified that the human body does not naturally produce THC, that an activated form of marijuana must have been ingested, and that THC cannot come from anything but cannabis plant material. He opined that the testing conducted in his San Diego laboratory was extremely accurate and reliable.

On cross-examination, the defense attempted to show that a urine sample could test positive if one consumed marijuana without heating it. LCDR Grimsley adhered to his opinion that marijuana must be heated before there would be any psychoactive effects or would produce a positive result on any of the urinalysis tests. He stated that he could not render an opinion either as to the method of ingestion or whether the individual whose urine was tested "felt the physiological effects." Record at 27.

On redirect examination, LCDR Grimsley described the effects that marijuana and its metabolite have on the human body. He said that, depending on the amount of THC, an individual could experience a feeling of euphoria, an altered perception of time, increased blood pressure, a flushed feeling, giddiness, talkativeness, and increased hunger. He emphasized that these effects would depend on the amount ingested, and that the more one ingests, the stronger the effects. He did not specifically relate these effects to a person with a level of 19 ng/ml.

The next two witnesses testified as to the collection procedures used in Appellant's case

---

3. The testing methodology reliably detected the presence and reliably quantified the concentration of the drug or metabolite in the sample.

*Barnes,* 53 M.J. at 627. This Court held then that in view of the lack of any evidence on the second factor, the prosecution was not entitled to the benefit of the inference of knowing, wrongful use. Accordingly, we set aside the findings as legally insufficient. *Barnes,* 53 M.J. at 627–28.

2. WHETHER THE LOWER COURT ERRED IN FINDING THE EVIDENCE LEGALLY INSUF-

FICIENT TO PERMIT THE FACTFINDER TO INFER THE ACCUSED'S KNOWING AND WRONGFUL USE OF MARIJUANA WHERE *UNITED STATES V. CAMPBELL* STATED IT DID NOT CREATE NEW LAW AND WHERE THE EVIDENCE PRESENTED AT TRIAL WAS AT LEAST THE SAME QUANTUM OF EVIDENCE THIS COURT PREVIOUSLY FOUND LEGALLY SUFFICIENT IN NUMEROUS PRE–*CAMPBELL* CASES.

and the forwarding of his urine sample to the NDSL in San Diego. Appellant has not contested any part of the collecting, forwarding, or testing of the sample. We find these portions of the prosecution's case to be conclusive as to establishing the presence of the THC metabolite in Appellant's body.

Testifying in his own defense, Appellant stated that he had never knowingly ingested marijuana or any other illegal substance. He offered no explanation for the positive urinalysis result and stated that he had "racked his brain," but to no avail. Record at 65. On cross-examination, he denied ever asking his neighbor for marijuana. However, he admitted that he had observed his neighbor use marijuana. On redirect examination, he added that he would "usually leave the area" whenever he noticed that his neighbor was smoking marijuana. Record at 80.

Appellant then called a Marine lieutenant colonel, captain, and staff sergeant as character witnesses. All three testified as to Appellant's good military character and truthfulness.[3] On cross-examination, trial counsel was permitted to ask the lieutenant colonel, over defense objection, and the captain, without objection, if they were aware that Appellant socialized on a regular basis and spent time in the presence of a person he knew to be using marijuana. Both indicated that they had not been aware of that association but that, if it were true, their favorable character opinions would be adversely affected. The staff sergeant also testified as to Appellant's good military character. On cross-examination, he agreed that he and Appellant were "best friends." However, he said that he would not be willing to lie for him. Record at 98.

In rebuttal, the prosecution called Appellant's neighbor, Mr. Bennett. Mr. Bennett said he had smoked marijuana "four or five" times in the presence of Appellant. Record at 107. He testified that during those times Appellant always remained while the witness consumed the marijuana. He also testified

that Appellant had asked him on two occasions for some marijuana, once before and once after the urinalysis. However, he thought Appellant was "joking" on each such occasion and did not provide him with any. Record at 109. According to Mr. Bennett's testimony, he refused to do this because the witness knew it was unlawful for any Marine to possess or consume illegal drugs.

Under cross-examination, Mr. Bennett admitted that he was born with a collapsed lung, and this event affected half of his brain. He subsisted on social security disability payments and could not read or write anything much more advanced than his own name. He also admitted that his memory was not very good, "but I remember what I remember." Record at 111–12. On surrebuttal, Appellant again denied having ever asked Mr. Bennett for marijuana.

### Discussion

▪ The U.S. Court of Appeals for the Armed Forces directed that we undertake further consideration of the legal sufficiency of the record of trial in light of its opinion in *United States v. Green*, 55 M.J. 76 (2001). *Barnes*, 55 M.J. at 236.[4]

In *Green*, a special court-martial had convicted the accused of, *inter alia*, two specifications of wrongful use of cocaine. Our superior Court held that:

> If the military judge determines that the scientific evidence ... is admissible, the prosecution may rely on the permissive inference during its case on the merits. A urinalysis properly admitted under the standards applicable to scientific evidence, when accompanied by expert testimony providing the interpretation required by [*U.S. v.*] *Murphy*, [23 M.J. 310 (C.M.A. 1987)], provides a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use, without testimony on the merits concerning physiological effects.

---

**3.** Appellant also entered into evidence three stipulations of expected testimony to the same general effect. Record at 81–82; Defense Exhibits J, K, and L.

**4.** In *Green* the Court had cited our published opinion in *Barnes* for the proposition that this Court had "conscientiously endeavored to apply the broad guidance we fashioned in *Campbell*." *Green*, 55 M.J. at 80.

*Green,* 55 M.J. at 81 (citing *United States v. Bond,* 46 M.J. 86, 89 (1997)). The Court held that the military judge, as evidentiary "gatekeeper," has broad discretion to determine whether the party offering expert testimony has established an adequate foundation with respect to admissibility, especially regarding reliability and relevance. *Green,* 55 M.J. at 80–81.

In the present case, the military judge considered as evidence a test that did not involve a novel scientific procedure. Rather, the evidence introduced was produced from a set of testing procedures well-established within the scientific and legal communities as reliable when properly employed. Moreover, the evidence that the Government introduced established beyond doubt that the test was rigorously employed in this particular instance.

Once the scientific evidence is admitted in the case on the merits, it is the responsibility of the factfinder to determine the weight given to the evidence. *Bond,* 46 M.J. at 89. The factfinder is empowered to draw upon a permissive inference of wrongfulness. *Green,* 55 M.J. at 81; *Bond,* 46 M.J. at 89.

In contrast to *Campbell,* Appellant did not move at trial to exclude the test result or the expert testimony. *See Green,* 55 M.J. at 81. The prosecution established a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use. Upon reconsideration and having applied the principles contained in *Green,* we now conclude that the prosecution's evidence was legally sufficient to support the findings that Appellant was guilty of this offense.

### Assignments of Error

In his most recent brief, Appellant resubmitted three earlier assignments of error for this Court to consider.[5] We will address each in order.

### Assignment of Error I—Factual Insufficiency

Appellant first contends that the military judge "erred" in convicting him of wrongful use of marijuana, because the defenses of innocent ingestion and good military charac-

ter raised a reasonable doubt as to his guilt. In effect, he is asking this Court to set aside his conviction on the basis that the evidence of record must raise a reasonable doubt in our minds as to his guilt.

■ Under our statutory obligations, before we can affirm a guilty verdict, we must determine both the legal and factual sufficiency of the evidence. Art. 66, UCMJ. The test for legal sufficiency "is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987)(citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The elements of wrongful use of a controlled substance are:

(1) That the accused used a controlled substance; and

(2) That the use by the accused was wrongful.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (1984 ed.), Part IV, ¶ 37(b)(2). The Manual also provides:

Knowledge of the presence of the controlled substance is a required component of [wrongful] use. Knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the government's burden of proof as to knowledge.

MCM, Part IV, ¶ 37c(10). *See also United States v. Mance,* 26 M.J. 244 (C.M.A.1988), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988); *United States v. Ford,* 23 M.J. 331 (C.M.A.1987).

Applying these principles to the facts of this case, we concluded earlier in this opinion that the evidence is legally sufficient.

■ The test for factual sufficiency "is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,

---

**5.** These are recapitulations of the still relevant assignments of error that Appellant first submit-

ted in his Appellate Briefs of 27 July 1995, 14 February 1997, and 21 May 1999.

the members of [this Court] are themselves convinced of [Appellant's] guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

After hearing all the evidence and personally observing the witnesses, the military judge in this case, as trier-of-fact, found Appellant guilty of one specification of wrongful use of marijuana beyond a reasonable doubt. Record at 130. Before affirming the conviction, however, we must independently be so convinced.

In its case-in-chief, the prosecution relied solely on the positive urinalysis test and the presumption of knowing, wrongful usage of the controlled substance indicated. Although it attempted to show that the positive urinalysis could be consistent with innocent ingestion, the defense virtually conceded that the test results were 100% accurate.

To try to rebut the inference of knowing, wrongful use, Appellant took the stand in his own defense at the very first opportunity. That effort may well have backfired. His testimony of record comes across as highly equivocating and defensive, almost belligerent at times.[6] Moreover, Appellant's version of events was often inconsistent with other, more dispassionate testimony. For example, Appellant testified that he saw Mr. Bennett smoking marijuana in his presence on only one occasion.[7] Mr. Bennett, who had no apparent motive to lie, testified that Appellant was present on four or five such occasions. *Id.* at 107. Appellant testified that he left the area on each of the "times" that Mr. Bennett began to smoke the drug.[8] *Id.* at 80; *see also id.* at 64 (he "walked away" each time). In contrast, Mr. Bennett testified that Appellant always would remain with him while he smoked marijuana. *Id.* at 108.

After denying that he had ever even been to a party of any kind with his fiancee's friend and bowling partner, Appellant responded to a follow-on question from the trial counsel about an allegation that he had smoked marijuana at just such a party:

A: No, ma'am; that I can recall, no.

Q: And so if Noelle stated . . . that she saw you smoking marijuana at a party, that would be incorrect; is that what you are saying?

A: As far as I know, ma'am. I know she was currently going to [Narcotics Anonymous].

*Id.* at 76. No doubt Appellant's defensive, forgetful, and often combative testimony, even where he denied ever having used illegal drugs, combined with all the other evidence, was helpful in enabling the trier-of-fact to arrive at the guilty finding. Nor does Appellant's testimony cause us to have any doubt as to his guilt.

Appellant argues that there was motive and opportunity for any of a number of disaffected Marines working for him to "set him up" by putting illegal drugs in the food or coffee that he asked them to get for him while working in his office. Once the defense has raised innocent ingestion as a defense, the Government must "persuade the [trier-of-fact] beyond a reasonable doubt on credibility and probability grounds that this evidence should be disbelieved and the inference should nonetheless be drawn and given such weight to find knowledge beyond a reasonable doubt." *Ford*, 23 M.J. at 336.

We have carefully considered the evidence of record as it relates to this possible scenario. The only evidence that establishes motive and opportunity for setting him up came

---

**6.** Appellant consistently answered questions on cross-examination with responses of "I don't know," "I can't recall," or "I'm not sure." *See* Record at 67–80. At one point, in response to the question: "Is marijuana green?", he responded: "I don't know, ma'am." *Id.* at 68. He was also highly combative, often engaging the trial counsel in verbal sparring. At one point the military judge felt it necessary to interrupt Appellant's testimony to admonish him: "You'd better stop being disrespectful and smart-mouthing [the trial counsel]." *Id.* at 73.

**7.** "I probably only seen him once, ma'am." Record at 77. Although earlier he had admitted that he had seen Mr. Bennett using marijuana "a couple of times" and "on a couple of occasions." *Id.* at 64, 67.

**8.** In fact, after admitting that he had socialized, eaten, and drunk beer with Mr. Bennett about two times per week over the course of several months, when asked how many times he had observed Mr. Bennett smoke marijuana, Appellant twice responded: "I don't know." He then stated: "I probably only seen him once, ma'am." Record at 77.

from Appellant and his "best friend." While there is a remote possibility that a disaffected junior enlisted Marine would run the enormous risks associated with "spiking" a superior staff noncommissioned officer's (NCO's) food or drink with marijuana to get him into trouble, the testimony of record merely provides rank speculation in this regard. Appellant denies ever having noticed anything whatsoever out of the ordinary in what he ate or how he felt after eating it.[9] Neither he nor his friend could point their fingers at any particular suspect or situation in which this might have transpired or evidence that it had taken place.[10] When weighed in combination with all the other evidence of record, this theory and the facts of record simply fail to raise a reasonable doubt in our minds.

■ Appellant also contends that evidence of good military character must raise a reasonable doubt as to his guilt. Military Rule of Evidence 404(a) generally prohibits the introduction of character evidence "for the purpose of proving that the person acted in conformity therewith on a particular occasion." MIL. R. EVID. 404(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1984 ed.). However, an accused can offer good military character as a defense to prosecutions involving illegal drugs. *United States v. Brown*, 41 M.J. 1, 4 (C.M.A.1994); *United States v. Vandelinder*, 20 M.J. 41, 44–45 (C.M.A.1985). In this case Appellant testified that he had served honorably for 14½ years. He had earned a Navy Commendation Medal and two Navy Achievement Medals. Record at 66; *see* Defense Exhibits A–C. He also offered a total of 13 superlative personnel evaluations. Defense Exhibit G.

The defense also offered the testimony of three character witnesses, a Marine lieutenant colonel, a Marine captain, and a Marine staff sergeant and several stipulations of expected testimony as to Appellant's good military character and truthfulness. Except for the staff sergeant, Appellant's "best friend," however, none of the witnesses apparently had any idea of Appellant's off-duty activities. Moreover, in contrast to Appellant's rather cavalier attitude toward socializing regularly with at least one known drug user, both Marine officers testified that such activities were inconsistent with what they expected of a Marine staff NCO. They also both testified that, if this allegation were true, it would adversely affect their otherwise favorable opinions of Appellant's military character. Record at 88, 91.

■ For his part, Appellant had testified that he had socialized with at least one known drug user. *Id.* at 64, 67. Moreover, he testified that he saw nothing at all inconsistent with good military character for a Marine NCO to socialize regularly with known drug users. *Id.* at 79. As our superior Court observed, however, military personnel are "on notice to avoid any and all contact with [illegal drugs], a fact which further reduces the possibility of innocent ingestion." *Ford*, 23 M.J. at 337. We also note the testimony of Appellant's neighbor, who had no reason to testify falsely in this regard, that Appellant had twice asked him for some marijuana.[11]

After a careful review of the entire record, we are able to conclude, beyond a reasonable doubt, that Appellant committed the offense of wrongfully and knowingly using marijuana as charged.

---

9. Appellant is apparently not overly fastidious about his eating habits, however. He testified that he would occasionally drink his coffee with cigarette ashes floating on the surface. Record at 69.

10. On cross-examination, Appellant's best friend testified that he had overheard two Marines "snickering" between themselves that "we got Barnes now." When challenged by the assistant trial counsel, he admitted that what he actually heard them say is that they were pleased that Barnes had "finally got caught." Record at 100.

11. In his separate opinion in *Barnes*, Judge Gierke noted that the "probative value of asking a neighbor for drugs, as in the present case," was significantly different than the marginal relevance of merely knowing or associating with known or suspected drug users. *Barnes*, 55 M.J. at 236–37 (Gierke, J., concurring in part and dissenting in part). In the instant case, we note that Appellant's neighbor (and friend) testified that he thought that, in making each of these two requests, Appellant had been "joking." Record at 109.

### Assignment of Error II—Testimony Concerning Association with Known Drug Users

Citing *United States v. Perry,* 37 M.J. 363 (C.M.A.1993), Appellant next contends that the military judge erred to his substantial prejudice by allowing testimony concerning his association with known drug users. In *Perry* our superior Court held that evidence of knowledge of drugs users did not make the accused's own drug use "more or less probable." *Id.* at 364. He argues that this evidence was prejudicial in that it tended to prove only "guilt by association." *Id.*

■ Once an accused has placed his character at issue as a defense to drug prosecutions, the prosecution may rebut this evidence by questioning defense character witnesses, including the accused, about relevant instances of specific conduct. *United States v. Pearce,* 27 M.J. 121, 123 (C.M.A. 1988); MIL. R. EVID. 404(a)(1). Any such rebuttal evidence must be relevant under Mil. R. Evid. 401 and 402, and its probative value cannot be substantially outweighed by its prejudicial effect. *Pearce,* 27 M.J. at 124–25; MIL. R. EVID. 403.

Even though a trait of character is admissible, the Military Rules of Evidence prescribe the form that evidence may take. Mil. R. Evid. 405(a) provides:

> *Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

When a military judge rules on an evidentiary objection such as this one, we are to apply an abuse-of-discretion standard. *United States v. Sullivan,* 42 M.J. 360, 363 (1995); *United States v. Orsburn,* 31 M.J. 182, 187 (C.M.A.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1074, 112 L.Ed.2d 1179 (1991).

■ In this case, Appellant raised the defense of good military character and suggested the possibility of innocent ingestion, the only possible explanation consistent with that character and the other evidence. On cross-examination of Appellant's first character witness, a Marine lieutenant colonel who had known him only professionally, trial counsel asked whether he was aware that Appellant was living with a drug user and that he socialized "on a fairly regular basis with someone who was smoking marijuana in his presence." Record at 88. The defense counsel objected to the latter question, apparently on the basis of relevance; the military judge immediately overruled the objection. *Id.* The witness admitted that he had no personal knowledge of this but, if true, it would adversely effect his opinion of Appellant's military character. *Id.* at 89. Later, trial counsel asked similar questions of Appellant's second character witness, a Marine captain. *Id.* at 94–95. Although admittedly unaware of any such associations, the witness testified that, if true, it would raise serious concerns in his mind about Appellant's military character. *Id.* at 95–96. Defense counsel entered no objection to this second line of questions.

We conclude that it was not improper to question Appellant's character witnesses in this manner. Trial counsel's questions went directly to test the basis of the witness opinion of the good military character of Appellant, and not to establish guilt by association. It was within the ambit of Mil. R. Evid. 405(b) to allow questioning into certain relevant instances of conduct in Appellant's off-duty life that adversely impacted upon various aspects of his military character, particularly good judgment and leadership-by-example. *See Ford,* 23 M.J. at 337 (in view of the military's campaign against illegal drugs, any servicemember knows that "marihuana is contraband" and that he should "avoid any and all contact" with it).

■ On the other hand, we are concerned about how trial counsel later summarized the military-character evidence in his closing argument on findings. In the concluding paragraph of his argument, he stated as follows:

> [B]ased on his conduct of ... associating with Marines that are known drug users, and living near and with Marines that are known drug users, we believe that based on the sum total of that evidence, sir, that we have proven to you beyond a reasonable doubt that Staff Sergeant Barnes, the accused in this case, is guilty as charged.

Record at 126. We know from the evidence that Appellant socialized regularly with Mr. Bennett, whom he knew to use marijuana regularly. One could also infer from the evidence that Appellant's fiancée and her friend possibly had used illegal drugs in his presence. However, there is no evidence at all in the record that Appellant associated or lived with any "Marines" who were known drug users.

As our superior Court noted in *Perry*, evidence and arguments attempting to establish "guilt by association" have "minimal" relevance. *Perry*, 37 M.J. at 364. The testimony to which Appellant's counsel objected at trial is relevant solely to rebut his good-military-character defense, not to establish that guilt is more likely because of the type of people with whom Appellant associated. Trial counsel should have used this evidence in his argument, if at all, merely to draw into question the validity and impact of Appellant's character witnesses and his good-military-character defense, not to develop a distorted theory of "guilt by association."

In any case, we find that there was no prejudice to Appellant's substantial rights on the facts of this case. Mischaracterizations of the evidence such as this, particularly before a military judge sitting alone, rarely provide any basis for appellate relief. Had Appellant objected at the time, which he did not, we are fully confident that the military judge would simply have stated that he would rely solely on his own recollection of the evidence. By not objecting, in the absence of plain error, which is not present here, Appellant waived the issue on appeal. R.C.M. 919(c).

Moreover, appellate courts presume that military judges know the law and apply it correctly. *United States v. Raya*, 45 M.J. 251, 253 (1996); *United States v. Prevatte*, 40 M.J. 396, 398 (C.M.A.1994). We have full confidence that the military judge in this case relied solely on his own recollection of the admissible evidence, for the purposes for which it was properly admitted, in reaching a finding of guilty.

Finally, we conclude that the error in trial counsel's argument was harmless. The prosecution had presented an overwhelming case of guilt based on the urinalysis evidence, a case that was only strengthened by Appellant's and Mr. Bennett's testimony. *See United States v. Walker*, 42 M.J. 67, 74 (1995).

## Assignment of Error III—Inappropriately Severe Sentence

█ Finally, Appellant contends in a summary assignment of error that a sentence that includes a bad-conduct discharge is inappropriately severe for a one-time use of marijuana by an otherwise outstanding Marine staff NCO.

We first note that the bad-conduct discharge was the only element of punishment included in the sentence. He never spent a single day in confinement. We are confident that the military judge, before arriving at what he considered to be the right sentence, gave appropriate individualized consideration to the nature of the offense and the offender. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). The use of illegal drugs by someone in Appellant's position seriously undermines the ability of the military to accomplish its mission. *United States v. Trottier*, 9 M.J. 337, 345–46 (C.M.A.1980). It is appropriate for Courts to hold a staff NCO to a higher standard as someone who is in a leadership position. *See United States v. Thompson*, 22 M.J. 40, 41 (C.M.A.1986). We recognized that Appellant presented the trial court, as well as the convening authority in his clemency petition, with substantial evidence of his 14½ years of outstanding military service. However, the adjudged sentence is well within the range of those appropriate to this offense and this offender. To set aside the bad-conduct discharge at this point would be to exercise clemency, which is not a function of this Court. *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988).

## Conclusion

Accordingly, we affirm the findings and sentence, as approved on review below.

Senior Judge FINNIE and Judge VILLEMEZ concur.