UNITED STATES, Appellee

v.

Ricardo NIEVES, Captain
U.S. Army, Appellant.

No. 94–1416.
CMR No. 9301031.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 31, 1995.

Decided May 29, 1996.

For Appellant: *Captain Richard E. Burns* (argued); *Lieutenant Colonel John T. Rucker* and *Major Fran W. Walterhouse* (on brief); *Colonel Stephen D. Smith* and *Captain Teresa L. Norris.*

For Appellee: *Captain Eugene E. Baime* (argued); *Colonel John M. Smith, Lieutenant Colonel James L. Pohl, Captain Anthony P. Nicastro* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial at Fort Wainwright, Alaska, convicted appellant, consistent with his pleas, of adultery, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court-martial also convicted appellant, contrary to his pleas, of fraternization; willful disobedience of a superior officer's non-contact order (4 specifications); conduct unbecoming an officer (3 specifications); and soliciting a false official statement, in violation of Articles 134, 90, and 133, UCMJ, 10 USC §§ 934, 890, and 933, respectively. Appellant was acquitted of attempted adultery and of fraternization (one specification each), in violation of Articles 80 and 134, UCMJ, 10 USC §§ 880 and 934, respectively. The approved sentence provided for dismissal from

the service, total forfeitures, and a fine of $4000.00.

The Court of Military Review * held that the evidence was insufficient to support appellant's conviction of three of the four specifications of willful disobedience. That court set aside those convictions but affirmed the remaining convictions, reassessed the sentence and affirmed only so much of the sentence as provided for dismissal from the service, forfeiture of $1970.00 pay per month until the dismissal is ordered executed, and a fine of $4000.00.

Our Court granted review of the following issue regarding the one remaining conviction of willful disobedience:

WHETHER LTC MCNAMARA'S ORDER PROHIBITING CPT NIEVES' DISCUSSIONS WITH WITNESSES WAS A LAWFUL MILITARY ORDER, WAS OVERBROAD, AND VIOLATED CPT NIEVES' RIGHT TO PREPARE A DEFENSE.

We agree with the court below that Lieutenant Colonel (LTC) McNamara's order was lawful.

*Factual Background*

This case arose from allegations that appellant, a married company commander, fraternized and had sexual relations with female noncommissioned officers and other enlisted women in his battalion. On January 25, 1993, the battalion commander, LTC McNamara, initiated an administrative investigation to determine whether appellant should be relieved of command; and he ordered appellant "not to have any discussions with members of Alpha Company, relative to the investigation." LTC McNamara testified that he told appellant he "was not going to relieve him at this time or seek his relief," because he "did not have the authority to relieve him" and "because they were just allegations at this point and I wanted to look into the matter." Near the end of the conversation, LTC McNamara told appellant: "I don't want you—I also don't want you to discuss it with anybody within the battalion who becomes a member of this investigation." At this time LTC McNamara was aware of only two witnesses and did not know who else might be involved.

Staff Sergeant (SSG) Preece, a member of Alpha Company, testified that appellant called him on the telephone on January 29, shortly after SSG Preece was questioned by the administrative investigating officer. SSG Preece described the conversation as follows:

Major Thew was the XO [Executive Officer] conducting a hearing regarding Captain Nieves. I had been in there talking to Major Thew and after I had come back to my room, Captain Nieves had called earlier and asked me, "What's up, Sergeant Preece?" I said, "Not much, sir." He goes, "Anything that I need to know about?" I told him that I can't talk about it.

Q [by trial counsel]. Why did you say that?

A. Major Thew had asked me not to speak to anyone about it.

Q. Okay. Go ahead.

A. He asked me once more, "How are things going?" or, "Is anything up? Anything that I need to know about." I said, "I can't talk about it." He goes, "Have a happy birthday, Sergeant Preece," and he hung up.

The Court of Military Review characterized appellant's questions during this conversation as "pumping a witness for information about the investigation." Unpub. op. at 3. Appellant's conversation with SSG Preece resulted in his conviction of willfully disobeying LTC McNamara's order.

On February 3, LTC McNamara gave appellant a written order to "not communicate in any way with the following soldiers acting as witnesses in the investigation (unless given specific authority to do so by myself or the Battalion Executive Officer)." The written order listed eleven members of Headquarters and Service Company, seven members of Alpha Company (appellant's unit), and four members of Bravo Company. SSG Preece was among those listed under Alpha Company.

* *See* 41 MJ 213, 229 n. * (1994).

LTC McNamara described his purpose in issuing the two orders as follows:

I had allegations from two people up through subordinate officers that there had been inappropriate conduct that occurred within his command and within the Battalion. I did not want him to contact anyone, either take [sic] the investigation that was going to go on or to use his command influence, to suppress anything that might come forward. That was the simple—at the beginning I didn't know, you know, what we had. This was just a precautionary measure to make sure that there was no undue influence by the accused.

LTC McNamara testified that he told appellant that the order would remain in effect "during the period of the investigation" and that "I would let him know when the investigation was over."

He also told appellant, "This is not to preclude you, if you or your lawyer needs to talk to those people, coming back and asking me." Finally, LTC McNamara testified that his order was limited to contact concerning the investigation: "If it wasn't to do with the investigation he, you know, he could contact [sic] normal business."

Appellant presented no evidence that he or his lawyer were ever denied permission to contact potential witnesses or that he even asked to do so. Likewise, appellant presented no evidence that LTC McNamara's order interfered with his case preparation.

After the prosecution rested, defense counsel moved for a finding of not guilty on the ground that the orders prohibited appellant from contacting witnesses against him; was "too broad and all inclusive to be legal"; and violated appellant's right to freedom of speech. The military judge denied the motion.

*Discussion*

■ Appellant now argues that LTC McNamara's order was overbroad, was unconstitutionally vague, and was an infringement on his right to prepare a defense. The Government responds that the order had a valid military purpose—to prevent tampering

with an investigation—and that it was sufficiently specific concerning the persons to whom appellant could talk and its duration. Finally, the Government argues that appellant's right to prepare a defense was not infringed because the order pertained only to an administrative investigation; no charges had been preferred; and the order allowed appellant and his lawyer to interview witnesses after clearing it with LTC McNamara or his executive officer.

Because appellant's conversation with SSG Preece was before the written order was issued, we will confine our holding to the lawfulness of the oral order of January 25.

■ A superior officer's order is presumed to be lawful. *Unger v. Ziemniak*, 27 MJ 349, 359 (CMA 1989), *citing United States v. Austin*, 27 MJ 227, 231–32 (CMA 1988). Moreover, an order "is disobeyed at the peril of the subordinate." Para. 14c(2)(a)(i), Part IV, Manual for Courts-Martial, United States (1995 ed.)

In *United States v. Wysong*, 9 USCMA 249, 26 CMR 29 (1958), this Court held that an order "not to talk to or speak with any of the men in the company concerned with this investigation except in line of duty" was unlawful. The order was issued because of the accused's efforts to interrogate and threaten witnesses involved in an investigation of sexual activities of his wife and minor stepdaughter with other soldiers. This Court held that the order was too broad—"so broad as to practically prevent all speech—except in line of duty." This Court observed, however: "If the order had been narrowly and tightly drawn and was 'so worded as to make it specific, definite, and certain,' it might well have been sufficient to support a conviction." 9 USCMA at 250–51, 26 CMR at 30–31.

Similarly, in *United States v. Aycock*, 15 USCMA 158, 35 CMR 130 (1964), this Court held that an order prohibiting the accused from contacting witnesses concerning the charges against him was unlawful because it interfered with the accused's right to prepare a defense.

■ On the other hand, in *United States v. Moore*, 32 MJ 56, 59 (1991), this Court

held that it was permissible to place an accused in pretrial confinement "to prevent an accused servicemember from intimidating witnesses or otherwise obstructing justice." It logically follows that, if physical restraint to prevent obstruction of justice is permissible, lesser moral restraint in the form of a superior's order would also be permissible. *Cf.* RCM 304(a), Manual, *supra* (types of pretrial restraint). The fundamental question, then, is whether LTC McNamara's order was too broad. We hold that it was not.

Unlike the order in *Wysong*, this order did not prohibit all speech, but only "discussions with members of Alpha Company, relative to the investigation." Unlike the order in *Aycock*, it did not interfere with appellant's right to prepare and present a defense. No charges had been preferred when appellant made his prohibited telephone call to SSG Preece. By its own terms the order expired when the administrative investigation concluded. Finally, there is no evidence that appellant ever requested permission to interview SSG Preece or that such permission was denied. *See United States v. Moore*, 32 MJ at 60 ("[T]here is no indication in the record before us that appellant's counsel was ever prevented from talking to these witnesses during that period.").

Accordingly, we hold that LTC McNamara's oral order of January 25 had a valid military purpose, was sufficiently narrow, and did not interfere with appellant's right to prepare his defense.

### Decision

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge COX, Judges SULLIVAN and CRAWFORD, and Senior Judge EVERETT concur.