UNITED STATES, Appellee

v.

James E. MOORE, Fire Control Technician Second Class
U.S. Navy, Appellant

No. 03-0083

Crim. App. No. 9900594

United States Court of Appeals for the Armed Forces

Argued April 30, 2003

Decided July 10, 2003

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Lieutenant Colonel Eric Bradley Stone, USMC (argued and on brief).

For Appellee:  Lieutenant Christopher C. Burris, JAGC, USNR (argued); Colonel Rose M. Favors, USMC (on brief).

Military Judge:  Clark A. Price.

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

United States v. Moore, No. 03-0083/NA

Chief Judge CRAWFORD delivered the opinion of the Court.

Appellant was convicted, contrary to his pleas, of failure to obey a lawful order, making a false official statement, and committing an indecent act, in violation of Articles 92, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, and 934 (2000), respectively. He was sentenced to a bad-conduct discharge, one month's confinement, and reduction to E-3. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed the findings and sentence. We granted review of the following issue:

> WHETHER THE LOWER COURT ERRED WHEN IT
> AFFIRMED THE TRIAL COURT'S FINDING OF
> GUILTY TO THE OFFENSE OF VIOLATING A
> LAWFUL ORDER WHERE THE MILITARY JUDGE
> ERRONEOUSLY DENIED THE DEFENSE MOTION
> TO DISMISS THE ADDITIONAL CHARGE,
> SPECIFICATION 1, WHERE THE ORDER WAS
> UNCONSTITUTIONALLY OVERBROAD, VAGUE
> AND UNLAWFUL.

For the reasons set forth below, we affirm.

## FACTS

Appellant, an E-5, was a Fire Control Technician in the Dam Neck Galley, a dining facility in Virginia Beach, Virginia. The galley employed approximately 59 military and 70 civilian workers. On any given shift, there were approximately 25 military and 30 civilian workers on duty. Seventy-five to 80 percent of the civilians were either physically or mentally disabled.

2

Given this unique work environment, the galley operated under a standing military policy "curtailing unnecessary association by military personnel with civilian employees." Military personnel were not permitted "to engage in horseplay with civilian employees nor . . . exit the building with [them or] . . . order [them] to do anything." This policy was reiterated to the troops every Monday, Wednesday, and Friday by the senior chief, as were instructions that if the military personnel needed anything work-related from the civilians, they were to request it through military channels, and not directly from the civilian personnel. The policy was instituted "in an effort to promote good order and discipline . . . due to the fact that [the civilians were] handicapped." Appellant had violated this policy once before and was counseled accordingly.

On February 21, 1998, Mr. Ray Cyrus, the galley's civilian supervisor, received a report from one of the civilian workers, Ms. Clarice Jones, that Appellant and another sailor were trying to coax Ms. S -- a disabled civilian employee at the galley who suffered from repeated short-term memory lapses -- into either the bathroom or the Master-at-Arms office. Ms. Jones stated that she had observed Appellant touch Ms. S's breasts. Another civilian employee, Ms. Gloria McKenzie, also reported to Mr. Cyrus that she observed Appellant and a companion attempt to

lure Ms. S into either the Master-at-Arms office or the galley bathroom.

After receiving this information, Mr. Cyrus located Ms. S and asked her what happened.  She responded that someone -- but not Appellant -- had grabbed her breasts, and that she had slapped his hand.  Immediately thereafter, Mr. Cyrus informed Mess Management Specialist First Class (MS1) Solomon Turner, the Master-at-Arms Duty Watch Captain and an E-6, about the report.  MS1 Turner issued an order to Appellant and the other implicated sailor that they were "not to converse with the civilian workers [in the galley]," and noted that the order applied to conversations with any civilian galley worker, not just Ms. S.  MS1 Turner gave Appellant this order some time between 9:30 and 10:00 a.m., and Appellant acknowledged it.

Nevertheless, within a half hour of receiving MS1 Turner's order, Appellant approached another civilian employee, Mr. Thurman Phillips, and stated: "That bitch lied on me.  She said I had touched her breasts."  Appellant left, but returned two or three minutes later and again spoke to Mr. Phillips about the incident with Ms. S.  These conversations gave rise to Appellant's conviction for violating MS1 Turner's order not to converse with the civilians.

United States v. Moore, No. 03-0083/NA

DISCUSSION

The legality of an order is a question of law that we review de novo. United States v. New, 55 M.J. 95, 100 (C.A.A.F. 2001). A superior's order is presumed to be lawful and is disobeyed at the subordinate's peril. Manual for Courts-Martial, United States (2002 ed.)[hereinafter MCM] Part IV, para. 14.c.(2)(a)(i); United States v. Nieves, 44 M.J. 96, 98 (C.A.A.F. 1996). Nevertheless, to sustain this presumption, "[t]he order must relate to military duty, which includes all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service." MCM Part IV, para. 14.c.(2)(a)(iii)(emphasis added). Moreover, the order may not "conflict with the statutory or constitutional rights of the person receiving the order" and must be a "specific mandate to do or not to do a specific act." Id. at para. 14.c.(2)(a)(iv) and (d). In sum, an order is presumed lawful, provided it has a valid military purpose and is a clear, specific, narrowly drawn mandate. See United States v. Womack, 29 M.J. 88, 90 (C.M.A. 1989).

Appellant does not challenge the validity of the order's purpose. Appellant does, however, challenge the order to have been unconstitutionally overbroad and vague, and therefore

5

unlawful.  Specifically, Appellant finds the order overbroad because it prevented him from speaking with all civilians. Moreover, Appellant finds the order vague and indefinite because it prohibited all speech with civilians, and not merely speech concerning the alleged assault or related investigation, and lacked either an express or implied termination point.  On both accounts, we disagree.

A.  The Order was not Unconstitutionally Overbroad in Violation of the First Amendment.

In United States v. Wysong, on which Appellant relies, this Court found unlawful an order "not to talk to or speak with any of the men in the company concerned with this investigation except in [the] line of duty."  9 C.M.A. 249, 251, 26 C.M.R. 29, 31 (1958).  Specifically, the Court found the order overbroad because it not only prohibited the appellant from communicating with people on and off duty, but, taken literally, also "prohibit[ed] the simple exchange of pleasantries between the [appellant] and those 'concerned' with the investigation."  Id. at 250-51, 26 C.M.R. at 30-31.

Since Wysong, however, this Court has refined its approach, focusing more directly on the specific conduct at issue in the context of the purposes and language of the order.  For example, in Womack, the Court held that a "safe-sex" order that arguably applied to "civilians having no connection with the military"

6

was constitutional given the appellant's specific conduct, which did not "violat[e] the order in this way."  29 M.J. at 91. Given the Court's new direction, in analyzing the order's breadth in this case, we decline to follow Wysong and, instead, employ the contextual approach favored in Womack.  See also United States v. Padgett, 48 M.J. 273 (C.A.A.F. 1998).

The Supreme Court has long-recognized the principle that "the military is, by necessity, a specialized society."  Parker v. Levy, 417 U.S. 733, 743 (1974).  Accordingly, "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it."  Id. at 758.  Given this distinction, "[t]he weighing of First Amendment considerations within the military is such that 'the right of free speech in the armed services is not unlimited and must be brought into balance with the paramount consideration of providing an effective fighting force for the defense of our Country.'"  United States v. Brown, 45 M.J. 389, 396 (C.A.A.F. 1996)(quoting United States v. Priest, 21 C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972)).  Thus, military authorities may curtail a servicemember's communication and association with other individuals -- and thus burden the servicemember's freedom of speech and association -- provided the authorities act with a valid military purpose and issue a

clear, specific, narrowly drawn mandate.  See United States v. Jeffers, 57 M.J. 13, 15-16 (C.A.A.F. 2002); Padgett, 48 M.J. at 276-78; Nieves, 44 M.J. at 98-99; Womack, 29 M.J. at 90.

The standing policy governing military/civilian employee contact at the galley prohibited military employees from exiting the building with any civilian, engaging in "horseplay" with any civilian, or giving orders to any civilian.  In this vein, if military employees needed anything work-related from a civilian, they were required to request it through their supervisors.  The valid military purpose of this policy was to promote good order and discipline in an environment in which civilian employees -- the vast majority of whom had physical or mental disabilities -- were at an increased risk of abuse and injury by non-disabled military personnel.  See United States v. McDaniels, 50 M.J. 407, 408 (C.A.A.F. 1999) (protecting civilians from injury at the hands of military personnel is a valid military purpose); Padgett, 48 M.J. at 277-78 (the military has a legitimate interest in protecting civilians from injury by servicemembers).

Appellant violated the galley's standing policy on a prior occasion.  His alleged second violation of that policy was much more serious.  Faced with the apparent ineffectiveness of the standing policy with respect to Appellant, and a potential investigation into Appellant's alleged criminal actions, MS1 Turner issued an order directed specifically at Appellant and

his co-actor. This order reflected both the purpose of the original standing policy and the further purpose of protecting the integrity of any investigation.

Within minutes after receiving the order from MS1 Turner, Appellant approached a civilian employee of the galley and, using derogatory language, stated that he had been falsely accused by another civilian employee of touching her breasts. His supervisors viewed this contact as threatening to the civilian employees and potentially compromising the integrity of the investigation. Under these circumstances, it is unnecessary to determine whether the outer limits of the order were overly broad, see McDaniels, 50 M.J. at 408, because Appellant's contact with the civilian employee involved the type of unlawful, service-discrediting conduct that may be prohibited by military orders. Padgett, 48 M.J. at 278.

In short, given the specific context in which the order was issued and the manner in which it was violated, we find that the order was not unconstitutionally overbroad in violation of the First Amendment.

B. The Order was not Unconstitutionally Vague or Indefinite in Violation of the Fifth Amendment.

Under the Due Process Clause of the Fifth Amendment, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled

to be informed as to what the State commands or forbids."
Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).  Here, the
central question of this "void for vagueness" doctrine is
whether Appellant "had actual knowledge of [the order's] nature
and terms, and [whether] he was on fair notice as to the
particular conduct which was prohibited."  Womack, 29 M.J. at
90.  Void for vagueness simply means that criminal
responsibility should not attach where one could not reasonably
understand that his or her contemplated conduct is proscribed.
Parker, 417 U.S. at 757.  In evaluating the sufficiency of
notice, we examine the order in light of the conduct with which
Appellant was charged.  Id.

     MS1 Turner's order directed Appellant not to converse in
any way with any civilian employees of the galley.  The order
was sufficiently clear and certain to have informed Appellant
that to speak with any civilian employee of the galley, as
Appellant did with Mr. Phillips, was to violate the order.
Appellant cannot now claim that the order was so vague that he
could not reasonably understand that his conversation with Mr.
Phillips was proscribed by the order.

     Because the order's language was sufficiently clear,
specific, and narrowly drawn under the circumstances of this
case, we find that the order was not unconstitutionally vague
and indefinite in violation of the Fifth Amendment.

CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.