### UNITED STATES

v.

**Michael J. HILDEBRANDT, Lance Corporal (E–3), U.S. Marine Corps.**

NMCCA 200000911.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 4 Feb. 1999.

Decided 22 March 2004.

Capt Phillip D. Sanchez, USMC, Appellate Defense Counsel.

LT Lori McCurdy, JAGC, USNR, Appellate Government Counsel.

Before PRICE, Senior Judge, CARVER, Senior Judge, and REDCLIFF, Appellate Military Judge.

CARVER, Senior Judge:

A special court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. The convening authority approved the adjudged sentence of confinement for 30 days, forfeiture of $639.00 pay for one month, reduction to pay grade E–1, and a bad-conduct discharge.

After the convening authority acted on the sentence, the appellant submitted an Article 73, UCMJ, 10 U.S.C. § 873, petition for a new trial to the Judge Advocate General of the Navy. The petition was based upon newly-discovered evidence of misconduct by one of the Government witnesses. The Judge Advocate General forwarded the appellant's petition to this court for disposition.

The appellant subsequently filed four assignments of error in which he contends that (1) the permissive inference of wrongful use permitted by the Manual for Courts–Martial (MCM or Manual) is unconstitutional, (2) the permissive inference instruction could be applied in an unconstitutional manner, (3) the military judge committed plain error in giving the permissive inference instruction, and

(4) the evidence of guilt is legally and factually insufficient.

We have carefully considered the record of trial, the appellant's four assignments of error, his petition for a new trial, and the Government's response to the appellant's pleadings. We conclude that the findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Legal and Factual Sufficiency

■ For convenience's sake, we take the appellant's assignments of error out of order. We begin with his assertion that the evidence presented by the prosecution is both legally and factually insufficient to sustain his conviction for wrongful cocaine use. Specifically, the appellant characterizes the prosecution's case as purely circumstantial and falling short of the reasonable doubt standard. We disagree.

We must determine both the legal and factual sufficiency of the evidence presented at trial. Art. 66, UCMJ; *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324. In contrast, the factual sufficiency test is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the [reviewing court] are themselves convinced of the accused's guilt beyond a reasonable doubt." *Id.* at 325. In making these determinations, we are mindful that reasonable doubt does not mean the evidence must be free of conflict. *United States v. Reed*, 51 M.J. 559, 562 (N.M.Ct. Crim.App.1999).

The Government presented the testimony of Sergeants Miller and Carr, Mr. Snethen, and Robert Sroka, a senior chemist from a Navy Drug Screening Laboratory (NDSL). Their testimony and documentary evidence established that, in accordance with standard practices, the appellant's urine was collected and transported to the NDSL and subsequently tested positive for the metabolite of cocaine.

The appellant took part in a unit-sweep urinalysis inspection. He provided a urine sample under the watchful eye of Thomas Snethen, then a corporal of Marines and qualified urinalysis observer. The appellant's urine sample was properly capped and sealed with an appropriate red security tab under the instruction of Sergeant (Sgt) Sean Miller, U.S. Marine Corps. At the conclusion of the collection process, Sgt Miller placed all of the samples collected, including that of the appellant, in a shipping container and secured the package in the locked office of the unit's First Sergeant.

The following day, Sgt Miller reclaimed the samples and surrendered them to Sgt John Carr, U.S. Marine Corps, the unit's Substance Abuse Noncommissioned Officer. Sgt Carr then secured the package in a wall locker in his office. Six days later, the samples were shipped to the NDSL.

An NDSL senior chemist, Mr. Sroka, explained the testing performed on the appellant's urine, as well as the scientific underpinnings of the analyses. Mr. Sroka testified that the appellant's urine sample arrived at the screening laboratory unmolested and with all security seals intact. He confirmed that the sample was tested and found positive three separate times using two distinct testing methods. Mr. Sroka also provided extensive testimony explaining the nature of both testing methods and the reliability of such analyses.

Initial immunoassay-screening tests revealed the presence of the metabolite for cocaine in the appellant's urine. Prosecution Exhibit 4. Re-screening and Gas Chromatography–Mass Spectrometry tests confirmed that the appellant's urine contained a concentration of the cocaine metabolite well in excess of the Department of Defense cutoff level. *Id.*

The appellant offered good military character evidence from two of his enlisted superiors and one commissioned officer. He also testified in his own defense that he did not knowingly use cocaine.

The appellant testified that the urinalysis occurred immediately following a 96–hour liberty period. The appellant was not surprised by the urinalysis evolution, because his unit always conducted unit sweeps at the conclusion of extended liberty periods. During the liberty period, the appellant traveled to Delaware, where he reunited with a group of acquaintances for an evening of drinking. While discussing his military career with these friends, the appellant realized that they did not share his positive view of service in the Marine Corps. The appellant concluded by stating that he had no idea how the cocaine entered his system.

In order to convict the appellant of violating Article 112a, UCMJ, wrongful use of a controlled substance, the prosecution must prove, beyond a reasonable doubt, that: (1) the appellant used cocaine; and (2) his use was wrongful. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 37b(2). With respect to the former element, the Government must prove that the accused knowingly used the controlled substance. In that regard, the Manual states:

Knowledge of the presence of the controlled substance *may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the government's burden of proof as to knowledge.*

MCM, Part IV, ¶ 37c(10)(emphasis added).

The Manual further provides that the wrongful nature of the use of a controlled substance may be inferred in the absence of evidence to the contrary. MCM, Part IV, ¶ 37c(5). The two inferences outlined in Paragraphs 37c(5) and (10) are commonly referred to as the "permissive inference of knowing and wrongful use." *United States v. Murphy*, 23 M.J. 310, 312 (C.M.A.1987).[1]

Our superior court has held that evidence of a properly conducted urinalysis test, the results of that test, and expert testimony explaining those results are sufficient to permit a factfinder to find beyond a reasonable doubt that the accused violated Article 112a, UCMJ. *United States v. Harper*, 22 M.J. 157 (C.M.A.1986); *see also United States v. Graham*, 50 M.J. 56, 58–59 (C.A.A.F.1999); *United States v. Bond*, 46 M.J. 86 (C.A.A.F.), *cert. denied*, 522 U.S. 869, 118 S.Ct. 181, 139 L.Ed.2d 122 (1997); *United States v. Thompson*, 34 M.J. 287 (C.M.A.1992).

In *United States v. Green*, 55 M.J. 76 (C.A.A.F.2001), a decision handed down after the appellant's court-martial, our superior court revisited the question of whether the Article 112a, UCMJ, elements can be satisfied with a positive urinalysis test alone. Answering that question in the affirmative, the court placed considerable faith in military judges as the "gatekeeper[s]" for the admission of such evidence. *Id.* at 80.

The *Green* court specified that military judges, when exercising their considerable discretion with respect to the admission of scientific evidence, should consider, among other things, whether: (1) the controlled substance metabolite in question was not naturally produced by the body or some other legal substance ingested by the accused; (2) the permissive inference is appropriate in light of the established Department of Defense cutoff level, the reported concentration found in the accused's urine, and other pertinent factors; and (3) the testing methodology employed was reasonable in detecting and quantifying the concentration of the metabolite in the accused's sample. *Id.; see also United States v. Barnes*, 57 M.J. 626, 630–31 (N.M.Ct.Crim.App.2002).

We agree with the appellant's assertion that much of the Government's evidence is circumstantial as to his actual use of cocaine. However, we also find that some of the evi-

---

1. The duality of the permissive inference as it pertains to both knowledge and wrongfulness dates back more than 40 years, and stems from earlier versions of the Manual, which generally provided that use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary, or words to that effect. *See* MCM (1984 ed.), Part IV, ¶ 37c(5); *see also*

*United States v. Ford*, 23 M.J. 331, 333 (C.M.A.1987)(citing ¶ 37c(5) of the 1984 edition of the Manual); *United States v. Harper*, 22 M.J. 157, 162 (C.M.A.1986)(citing ¶ 213g(5), MCM (1969 ed.)(Change 7)); *United States v. Crawford*, 20 C.M.R. 233, 235, 1955 WL 3558 (C.M.A.1955)(citing 213a, MCM (1951 ed.)).

dence, and in particular that of the chemist, is direct and compelling evidence that appellant's urine sample contained the metabolite, indicating his prior ingestion of a proscribed substance. Based on the evidence as a whole, the members were free to draw the permissive inference with respect to whether the appellant knowingly and wrongfully ingested cocaine. As explained above, neither statutory nor case law prohibits conviction of an offense in violation of Article 112a, UCMJ, based, in part, upon circumstantial evidence. In fact, military precedent permits the Government to satisfy both elements of an Article 112a charge with circumstantial evidence alone. *See Green,* 55 M.J. at 80; *Graham,* 50 M.J. at 58–59; *Bond,* 46 M.J. at 86; *Thompson,* 34 M.J. at 287. Consequently, the appellant's criticism of the prosecution's evidence as wholly circumstantial is neither completely accurate, nor well-taken.

As to the allegation of legal insufficiency, we find that the record contains more than sufficient evidence upon which reasonable members could have found all of the elements of using a controlled substance beyond a reasonable doubt.

Additionally, after weighing the evidence outlined above, including that presented by the appellant, and making the necessary allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt.

### Permissive Inference

The appellant argues that the permissive inference violates his right to due process under the Fifth Amendment to the Constitution, that the members could have applied the instruction in an unconstitutional manner, and that the military judge committed plain error in the manner in which he instructed the members. Separating the due process claim from the instruction-based arguments, which will be addressed in tandem, we deny all three assignments of error.

### 1. Due Process.

The appellant contends that Paragraphs 37c(5) and (10) of the Manual create "sequences of inferences," which improperly satisfy all of the Article 112a, UCMJ, elements. Appellant's Brief of 30 Apr 2002 at 9.

The appellant further argues that this series of inferences relieved the Government of its obligation to prove his guilt beyond a reasonable doubt and impermissibly shifted the burden of proof to him, thereby violating the Due Process Clause.

The appellant claims that the sequence of inferences unravels in the following fashion: (1) the presence of a metabolite in the accused's urine permits an inference that the metabolite derived from a controlled substance; (2) this leads to a further inference that the accused knew the controlled substance was in his body; (3) triggering an inference that the accused used a proscribed substance; and (4) that the knowing use, in turn, leads to a final inference of wrongful use. Appellant's Brief at 9–10. We disagree.

Congress designed Article 112a, UCMJ, to punish service members who, among other things, wrongfully use controlled substances. In interpreting the statute and providing guidance as to its application, the President has decreed that the offense involves two elements: (1) use of a controlled substance; and (2) that the use was wrongful. MCM, Part IV, ¶ 37b(2).

With respect to the first element, the President requires proof of knowing drug use and specifies that knowledge may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. MCM, Part IV, ¶ 37c(10). Similarly, the President's interpretation defines a permissive inference with respect to the wrongful use element. *See* MCM, Part IV, ¶ 37c(5). The inference is merely permissive. The accused may present evidence to dispel the inference of knowing use by presenting evidence of innocent ingestion or attack the inference of wrongfulness by either undermining the reliability of the scientific evidence or bringing forth evidence that his use was justified.

The admission of urinalysis results and expert scientific testimony permits an inference of knowing and wrongful use. *Green,* 55 M.J. at 80.

The appellant incorrectly argues that the presence of a metabolite in his urine permit-

ted an additional inference that the metabolite derived from a controlled substance, and yet another inference that the accused used a proscribed substance. But we find that the testimony of Mr. Sroka that the cocaine metabolite is not naturally occurring and is only present after the ingestion of cocaine is direct evidence on those two issues. The permissive inferences only came into play with respect to the crucial questions of whether this ingestion was knowing and wrongful. The appellant's contention that a four-part sequence of inferences is used to meet the two Article 112a elements is not supported by either the current Manual or the facts of his case.

Turning to the heart of the appellant's due process challenge, we must determine the proper constitutional standard for permissive inferences.

The Government encourages us to apply the standard announced by the Supreme Court in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Government's Brief of 23 Oct 2002 at 6. In *Leary*, the Supreme Court considered a case involving a conviction for violating a Federal law prohibiting the importation of marijuana into the United States. *Id.* at 30, 89 S.Ct. 1532; 21 U.S.C. § 176a. The statute in question permitted an inference that mere possession of marijuana was sufficient to infer that the defendant knew that the marijuana was imported into the United States. 21 U.S.C. § 176(a). Drawing upon its earlier decision in *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), the Supreme Court, finding that the inference was unconstitutional, declared that "a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because a lack of connection between the two in common experience." *Leary*, 395 U.S. at 33, 89 S.Ct. 1532.

In light of the fact that the permissive inference of knowing and wrongful drug use is not a creature of statute, but rather a creation of the President as an exercise of his authority under Article 36(a), UCMJ, 10 U.S.C. § 836(a), we are not altogether convinced that the *Leary* standard applies in this context. However, we remain mindful that the President's pronouncements are not binding on this court and that we have the responsibility to interpret the substantive offenses under the UCMJ. *See United States v. Czeschin*, 56 M.J. 346, 348 (C.A.A.F.2002); *United States v. Mance*, 26 M.J. 244 (C.M.A. 1988). Moreover, our superior court has signaled its preference for the more recent *County of Ulster, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), standard with respect to permissive inferences in the military justice arena. *See United States v. Pasha*, 24 M.J. 87, 90 (C.M.A.1987).[2] Under the *County of Ulster* test, a permissive inference will violate due process "only if ... there is no rational way that the triers of fact could reach the conclusion suggested by the inference [beyond a reasonable doubt] under the facts of the case." *Pasha*, 24 M.J. at 90 (citing *County of Ulster*, 442 U.S. at 157, 99 S.Ct. 2213).

Since the military judge may admit scientific urinalysis evidence only in those cases where the three criteria outlined in the *Green* decision, or other assurances of reliability, are present, *see Green*, 55 M.J. at 80, we are convinced that, in general, the drawing of a permissive inference of knowing and wrongful use, based upon such scientific evidence, is not irrational and is, thus, not unconstitutional. Although the case at bar was tried before the *Green* decision, the scientific evidence presented was more than sufficient to meet that test.

The appellant insists that more evidence must be shown to satisfy the reasonable doubt standard. We disagree. Contrary to the appellant's position, the reasonable doubt standard did not require the prosecution to exclude every possible explanation for the presence of cocaine in the accused's system. *See United States v. Gray*, 51 M.J. 1, 56 (C.A.A.F.1999), *cert. denied*, 532 U.S. 919, 121 S.Ct. 1354, 149 L.Ed.2d 284 (2001)(approving an instruction issued to the members that the proof need not "exclude ... every hypothesis or possibility of innocence but

**2.** The appellant also urges application of the *County of Ulster* test. *See* Appellant's Brief at 13.

every fair and rational hypothesis except that of guilt").

As mentioned earlier, the testimony of Mr. Sroka established that the cocaine metabolite is not naturally occurring and is only present after the ingestion of cocaine. Additionally, the appellant's metabolite levels were so far in excess of the applicable cutoff level as to suggest ingestion within the 48 hours preceding the collection of his urine sample. Finally, as a proscribed substance, common sense dictates that one does not casually consume cocaine. *United States v. Green*, 52 M.J. 803, 805 (N.M.Ct.Crim.App. 2000), *rev. denied*, 54 M.J. 226 (C.A.A.F.2000)(holding that when conducting a sufficiency analysis, this court, just like the members who heard the case, is permitted to apply its own common sense and knowledge of human nature and the ways of the world). Thus, in the absence of any believable explanation offered by the appellant, the Government's evidence excluded all reasonable and legal justifications for the presence of cocaine in the appellant's system. In the end, the inference of knowing and wrongful drug use drawn by the members was certainly rational under both the *Leary* and *Pasha* tests, and did not violate the appellant's due process rights by relieving the prosecution of its burden to prove his guilt beyond a reasonable doubt.

## 2. The Permissive Inference Instruction.

The appellant's assignments of error regarding whether the court members could have applied the permissive inference instruction in an unconstitutional manner by applying less than a reasonable doubt standard and that the military judge's instruction constituted plain error go hand-in-hand. Although the appellant couches the former assignment of error in terms of member misconduct, his argument actually questions whether the wording of the instruction issued was appropriate.

The military judge instructed the members regarding the possibility of drawing the permissive inferences of knowing and wrongful drug use. Despite having multiple opportunities to voice any complaints, the appellant permitted this instruction to reach the members without objection. The absence of an objection forfeits any subsequently claimed error in the absence of plain error. "Plain error" as a legal term requires that an error in fact exists, that it be plain or obvious, and that it materially prejudices the substantial rights of the appellant. *United States v. Finster*, 51 M.J. 185, 187 (C.A.A.F.1999); *United States v. Fuson*, 54 M.J. 523, 526 (N.M.Ct.Crim.App.2000).

The military judge instructed the members, in part, as follows:

> Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required.
>
> Knowledge by the accused of the presence of the substance and the knowledge of its contraband nature may be inferred from the surrounding circumstances. You may infer from the presence of cocaine in the accused's urine that the accused knew he used cocaine. However, the drawing of this inference is not required.
>
> . . . .
>
> The evidence has raised the issue of ignorance in relation to the offense of wrongful use of cocaine. There has been testimony tending to show that at the time of the alleged offense the accused may not have known that he used cocaine and was unaware that he used cocaine.
>
> I advised you earlier that the use must be knowing and conscious. If the accused was, in fact, ignorant of the use of cocaine during the alleged time frame, then he cannot be found guilty of the offense of wrongful use of cocaine.
>
> . . . .
>
> The burden is on the prosecution to establish the guilt of the accused. If you are satisfied beyond a reasonable doubt that the accused was not ignorant of the fact that cocaine was used during the alleged time frame, then the defense of ignorance does not exist.

Record at 164–66.

The military judge correctly instructed the members that the prosecution bore the burden of proving the appellant's guilt beyond a

reasonable doubt. He also instructed the members that they may draw the two permissive inferences of knowledge and wrongfulness. The military judge made it very clear that the members need not draw either inference. We see no error in these instructions, plain or otherwise. The appellant's assignments of error, therefore, are denied.

### Petition for New Trial

■ The appellant seeks a new trial based on the post-court-martial discovery of evidence relating to Sgt Carr's deficiencies as a Substance Abuse Noncommissioned Officer. After applying the proper standard to the evidence brought forth by the appellant, we find no cause to grant such relief.

Within weeks of the appellant's conviction, Sgt Carr was relieved of his duties as the Substance Abuse Noncommissioned Officer for his unit. During a turnover, Sgt Carr's replacement had discovered over 1,000 urine samples that Sgt Carr never forwarded to the NDSL for analysis. In a statement made to special agents of the Naval Criminal Investigative Service, Sgt Carr admitted that he often got behind in his work and negligently failed to submit, in a timely manner, many of the bottles of urine in his care to the laboratory for examination. He also admitted having a drinking problem.

Investigators examined more than 1,500 urine sample bottles discovered during a search of Sgt Carr's former spaces. None of the bottles under his care showed any signs of tampering.

A new trial shall not be granted on the grounds of newly-discovered evidence, unless the petition shows that: (1) the evidence was discovered after the trial; (2) the evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and (3) the newly-discovered evidence, if considered by a court-martial in the light of other pertinent evidence, would probably produce a substantially more favorable result for the accused. RULE FOR COURTS-MARTIAL 1210(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). A petition for new trial may rest upon newly-discovered evidence that would "substantially impeach[ ]" critical prosecution evidence "on a material matter." *United States*

*v. Williams*, 37 M.J. 352, 354 (C.M.A.1993). A reviewing court will judge the credibility and materiality of the new evidence, and in so doing will weigh the "testimony at trial against the post-trial evidence to determine which is credible." *United States v. Sztuka*, 43 M.J. 261, 268 (C.A.A.F.1995)(citing *United States v. Bacon*, 12 M.J. 489, 492 (C.M.A. 1982) and *United States v. Brozauskis*, 46 C.M.R. 743, 751, 1972 WL 14492 (N.M.C.M.R.1972)).

Admittedly, Sgt Carr's failure to forward more than 1,500 urine samples to the Navy Drug Screening Laboratory in a timely manner is troubling and casts considerable doubt on his competence. However, we must first consider whether Sgt Carr's testimony constituted critical prosecution evidence on a material matter. *Williams*, 37 M.J. at 354. Mr. Snethen observed the appellant as he provided his urine sample. Sgt Miller oversaw the capping and securing of the appellant's sample. The next day, all of the unit's samples, including that of the appellant, were delivered into Sgt Carr's custody where they remained untouched until he shipped the bottles to the Navy Drug Screening Laboratory 6 days later. The only matter of consequence to which Sgt Carr testified was that he was responsible for delivering the samples to the laboratory. Yet, his testimony was superfluous on this issue, because Prosecution Exhibit 4, which was completed by Sgt Miller as it applied to the appellant, established that the sample in question was collected on 13 October 1998 and received by the laboratory on 21 October 1998. Moreover, Mr. Sroka testified that the appellant's urine sample arrived at the screening laboratory with all security seals intact. Consequently, Sgt Carr's testimony can hardly be described as critical prosecution evidence on a material matter. Even if it was, we cannot say that evidence of Sgt Carr's mishandling of other urine samples, unrelated to this unit sweep, impeached the considerable evidence that the appellant's sample was in fact properly collected, transmitted, and analyzed.

Even if the members had considered evidence of Sgt Carr's derelictions, we are unconvinced, in light of all the other pertinent evidence, that the appellant would have se-

cured a substantially more favorable result. R.C.M. 1210(f). Therefore, his petition for a new trial is denied.

### Conclusion

Accordingly, we affirm the findings and the sentence as approved by the convening authority.

Senior Judge PRICE and Judge REDCLIFF concur.