**UNITED STATES**

v.

**Jared G. SCHWARTZ, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCCA 200101043.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 17 June 1999.

Decided 20 May 2005.

Lt Marcus N. Fulton, JAGC, USN, Appellate Defense Counsel.

Lt Brian Mizer, JAGC, USNR, Appellate Defense Counsel.

Lt Christopher Hajec, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Chief Judge, CARVER, Senior Judge, and WAGNER, Appellate Military Judge.

CARVER, Senior Judge:

A military judge sitting as a special court-martial convicted the appellant, contrary to his pleas, of violating a lawful order by refusing to receive anthrax vaccine, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The appellant was sentenced to a bad-conduct discharge and confinement for 45 days. The convening authority approved the sentence as adjudged. Pursuant to a pretrial agreement, all confinement in excess of 30 days was suspended for 12 months from the date of trial.

The appellant alleges that the military judge erred by denying his motions to produce an expert witness and provide independent testing of a sample of the vaccine, and that the order to receive the vaccine was unlawful. *See* Appellant's Brief of 31 Oct 2003. In a supplemental assignment of error, the appellant contends that the order violated his constitutional right to refuse unwanted medical treatment. *See* Appellant's Motion for Leave to File and Supplemental Brief of 18 Mar 2005.

We have carefully considered the record of trial, all of the appellant's assignments of error, the motion to expedite review, and the

Government's responses. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Lawfulness of Order

The appellant alleges that the order to receive the anthrax vaccine was unlawful. We disagree.

■ Military orders are presumed to be lawful and are disobeyed at the subordinate's peril. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ED.), Part IV, ¶ 14c(2)(a)(i); *see United States v. Nieves*, 44 M.J. 96, 98 (C.A.A.F.1996). To sustain the presumption of lawfulness, " 'the order must relate to military duty, which includes all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service.' " *United States v. Moore*, 58 M.J. 466, 467–68 (C.A.A.F.2003)(quoting MCM, Part IV, ¶ 14c(2)(a)(iii)). The order may not conflict with the subordinate's statutory or constitutional rights and must be a " 'specific mandate to do or not to do a specific act.' " *Id.* (quoting MCM, Part IV, ¶ 14c(2)(a)(iv) and (d)). To be lawful, an order must (1) have a valid military purpose, and (2) be clear, specific, and narrowly drawn. *Id.* at 468; *United States v. Womack*, 29 M.J. 88, 90 (C.M.A.1989).

■ Our superior court, after thoroughly reviewing the legislative history of the UCMJ and the Manual for Courts-Martial, concluded that the lawfulness of an order is purely a legal question for the military judge to decide at trial. *United States v. New*, 55 M.J. 95, 105 (C.A.A.F.2001). This approach "ensures that the validity of the regulation or order will be resolved in a manner that provides for consistency of interpretation through appellate review." *Id.* The appellate courts review the trial judge's decision *de novo. Moore*, 58 M.J. at 467.

■ The United States Supreme Court stated long ago that "the military is, by necessity, a specialized society." *Parker v.*

*Levy*, 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). "Accordingly, 'the fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.' " *Moore*, 58 M.J. at 468 (quoting *Levy*, 417 U.S. at 758, 94 S.Ct. 2547). For that reason, the appellate courts have upheld as lawful orders restricting servicemembers' personal hygiene, consumption of alcoholic beverages, driving privileges, and financial transactions. *See United States v. McDaniels*, 50 M.J. 407 (C.A.A.F.1999)(order prohibiting servicemember from driving his personal vehicle); *United States v. McClain*, 10 M.J. 271 (C.M.A.1981)(order prohibiting loans between seniors and subordinates); *United States v. McMonagle*, 34 M.J. 852 (A.C.M.R.1992)(order prohibiting alcohol consumption in Panama); *United States v. Horner*, 32 M.J. 576 (C.G.C.M.R.1991)(order to take a shower).

Military orders can likewise permissibly intrude upon individual servicemembers' physical privacy. An order to submit a blood test or urine sample is lawful. *See Unger v. Ziemniak*, 27 M.J. 349, 357–58 (C.M.A.1989); *United States v. Armstrong*, 9 M.J. 374 (C.M.A.1980). Orders restricting sexual or romantic activity are permissible. *United States v. Padgett*, 48 M.J. 273 (C.A.A.F.1998)(upholding order to terminate romantic relationship with teenage girl), *Womack*, 29 M.J. at 91 (upholding limitations on sexual intercourse for HIV positive servicemember). Even orders placing conditions upon marriage have been upheld. *See United States v. Wheeler*, 30 C.M.R. 387, 1961 WL 4458 (C.M.A.1961).

This court held, 40 years ago, that the military could order servicemembers to receive vaccinations, even over religious objection. *United States v. Chadwell*, 36 C.M.R. 741, 749–50, 1965 WL 4806 (N.B.R.1965). This is justifiable because "[t]he military, and society at large, have a compelling interest in having those who defend the nation remain healthy and capable of performing their duty." *Womack*, 29 M.J. at 90 (citing *National Treasury Employees Union v. Von*

*Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989)). As this court stated in *Chadwell:*

> If we may attach any value whatever to medical knowledge which is common to all civilized peoples, we must conclude on the basis of common knowledge that an order to take immunization shots is legal and necessary in order to protect the health and welfare of the military community and that failure to take such shots would represent a substantial threat to public health and safety in the military. This conclusion is inescapable when it is considered the requirement that shots be taken is determined at departmental level and applies to all military personnel.

36 C.M.R. at 749–50 (internal citation omitted). Undoubtedly, many servicemembers were reluctant to receive vaccines for diseases such as smallpox, where the potential for severe side effects was well documented. Nonetheless, the order for inoculation was valid. Even in the civilian sector, the compulsory inoculation against deadly diseases has been upheld by the U.S. Supreme Court. *See Jacobson v. Massachusetts,* 197 U.S. 11, 31–32, 25 S.Ct. 358, 49 L.Ed. 643 (1905)(finding no constitutional violation for mandatory smallpox vaccinations).

The Department of the Navy's anthrax vaccination implementation program (AVIP) has generated considerable controversy since its inception several years ago. This court previously addressed the lawfulness of an order to receive the anthrax vaccine, albeit within the context of a petition for extraordinary relief. *Ponder v. Stone,* 54 M.J. 613 (N.M.Ct.Crim.App.2000). The medical and legal issues raised by the appellant in the present case are nearly identical to those in *Ponder.* The crux of the appellant's argument is that he has a statutory right not to be inoculated with an "investigational new drug" (IND) without his consent, thus rendering an order to receive the vaccine unlawful. *See* 10 U.S.C. § 1107.

In *Ponder,* we held that,

> Executive Order 13139, which implements 10 U.S.C. § 1107, clearly states that the requirements it incorporated from the statute are for internal management only

and confer no right enforceable by any party against the United States. E.O. 13139, § 6(b). Additionally, Secretary of the Navy Instruction 6230.4 of 29 April 1998, which implements the Department's anthrax vaccination implementation program [DON AVIP], states that the anthrax vaccine is a FDA-licensed product and not an IND requiring informed consent for its administration. *Id.,* Annex A to Enclosure (1) at A–2. This would imply that the vaccine is also not an experimental or test drug that would require informed consent under 50 U.S.C. § 1520a(c). According to the DON AVIP instruction, anthrax immunization is mandatory and those refusing the vaccine are subject to disciplinary action. SECNAVINST 6230.4, Annex E to Enclosure (1) at E–11. Under these circumstances, the petitioner has not shown that the military judge's ruling [that the order is lawful] is so contrary to statute, settled case law, or valid military regulation as to deny him relief that is clearly and indisputably due him as a matter of right. Accordingly, we find that the issuance of an extraordinary writ at this time is neither necessary nor appropriate.

*Id.* at 616–17 (footnote and internal citation omitted).

While not reviewing the lawfulness of the order *de novo,* our decision in *Ponder* nonetheless addressed the applicable rules, statutes, and instructions pertaining to this issue. The Army Court of Criminal Appeals has reached a similar result, which is currently pending review by our superior court. *See United States v. Kisala,* No. 2000–930, unpublished op. (Army Ct.Crim.App. 22 Dec. 2003), *rev. granted,* 61 M.J. 18 (C.A.A.F. 2005).

Applying our superior court's test for lawfulness, we hold that an order to receive the anthrax vaccine is lawful. *See Moore,* 58 M.J. at 468. There can be little doubt that the vaccination of servicemembers has a valid military purpose. As our superior court recently held:

> The evidence offered at trial demonstrated that the vaccination program was designed and implemented as a defensive measure in the face of a significant military threat.

Assuming the validity of the data provided by appellant concerning the risk of adverse effects from the vaccination, such information does not demonstrate that the purpose of the vaccination program was "mundane" or that such risks were so immediate and widespread as to undermine its purpose.

*United States v. Washington,* 57 M.J. 394, 398 (C.A.A.F.2002). The vaccine is a means to retain servicemembers' readiness capability in the face of a biological attack. The military purpose of the vaccine is self-evident.

Likewise, we hold the order to be clear, specific, and narrowly drawn. The appellant was ordered to receive a vaccination, administered through a Department of Defense program with detailed instructions for medical personnel and unit commanders. *See Chadwell,* 36 C.M.R. at 749–50. The appellant was not confused or misled; rather, he knew precisely what he was ordered to do, and refused to do it.

The appellant's attack on the order is two-fold. First, he argues that the anthrax vaccine was only approved by the U.S. Food and Drug Administration (FDA) for exposure to cutaneous anthrax and not inhalational anthrax, thus making the vaccine an IND for that purpose. Second, he argues that an unapproved additive, squalene, also renders the vaccine an IND. Appellant's Brief at 6–7, 10. As we held in *Ponder,* the Secretary of the Navy expressly determined that the anthrax vaccine, which was approved by the FDA in 1970, is not an IND. 54 M.J. at 616. The appellant's arguments to the contrary must fail because "they would unacceptably substitute appellant's personal judgment of the legality of an order for that of his superiors and the Federal Government." *New,* 55 M.J. at 107. Second, there is no evidence, save for conspiratorial allegations on the Internet and in a magazine article, that any component of the AVIP has deliberately added squalene to the vaccine.[1] *See* Appellate Exhibit XXXVIII.

We are mindful that a federal district court recently ordered the cessation of the AVIP. *See Doe v. Rumsfeld,* 341 F.Supp.2d 1 (D.D.C.2004), *appeal filed,* No. 04–5440 (D.C.Cir. Dec. 30, 2004). We also note, however, that the basis for that decision was a technical violation of the Administrative Procedures Act, 5 U.S.C. § 706(2), because the FDA failed to provide a sufficient period for public comment before issuing a final determination that the vaccine was not an IND for inhalational anthrax. *Doe,* 341 F.Supp.2d at 15–16. The Government has appealed that decision, and even if that appeal is unsuccessful there is nothing within *Doe* suggesting retroactivity to the time of the appellant's trial. Notwithstanding the recent injunction halting the AVIP, we find no basis in *Doe* to challenge the lawfulness of the anthrax order when it was given to the appellant. To the contrary, the substance of the FDA determination significantly undermines the appellant's argument. *Id.* at 6–7.

We have reviewed the extensive motion testimony and voluminous exhibits received and considered by the military judge at trial, as well as the supplemental materials submitted by appellate counsel. We find nothing within this record to overcome the presumption of lawfulness regarding the order for the appellant to receive the anthrax vaccine. Accordingly, we deny the requested relief.

**Refusal to Receive Medical Treatment**

■ The appellant, in his supplemental assignment of error, attacks the lawfulness of the order from a slightly different legal ground, asserting that the order violates his constitutional right to refuse medical treatment. *See* Appellant's Motion for Leave to file and Supplemental Brief. In support, the appellant relies primarily upon the United States Supreme Court's decisions in *Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990), and *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). *Cruzan* is a Supreme Court "right to die" decision, in which the parents of an individual

---

1. Improved testing methods, employed after the date of the appellant's trial, have indicated trace amounts of squalene can be present in the vaccine, but the Department of Defense vigorously denied that the substance was purposefully added. *See* Appellant's Motion to Attach of 31 Oct 2003 at App. A and B.

in a vegetative state desired to withhold artificial means of nourishment. 497 U.S. at 265, 110 S.Ct. 2841. *Sell* involved the forced administration of drugs to render a criminal defendant competent to stand trial. 539 U.S. at 169, 123 S.Ct. 2174; *see also Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)(upholding prison regulation that allowed forced administration of anti-psychotic medications to prisoners in certain circumstances). The cases cited by the appellant are factually and legally distinguishable from the present case.

First, neither *Cruzan* nor *Sell* overruled the Supreme Court's prior decision in *Jacobson v. Massachusetts*, which found no constitutional right to refuse inoculation. 197 U.S. at 31–32, 25 S.Ct. 358. Nor has the appellant offered any authority citing either case as a basis for refusing compulsory inoculation. We are confident that the Supreme Court never intended *Cruzan* or *Sell* to impede vaccination programs in either civilian or military contexts. The appellant's interpretation of these decisions is unduly broad, and we decline to adopt his reasoning here. *See Vacco v. Quill*, 521 U.S. 793, 809, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997)(Stevens, J., concurring); *Boone v. Boozman*, 217 F.Supp.2d 938, 955 (E.D.Ark.2002).

Second, we are aware of no authority expressly extending the holding of either case to military personnel, whose personal liberty interests are often limited to preserve good order and discipline and fulfill military missions. *See Moore*, 58 M.J. at 468; *see also United States v. Bygrave*, 46 M.J. 491, 497 (C.A.A.F.1997). To the contrary, unwarranted refusal of medical attention could form the basis for a charge of malingering under the UCMJ. *See* Art. 115, UCMJ, 10 U.S.C. § 915. The explanation section of Article 115, UCMJ, in the Manual for Courts–Martial states that self-injury "may be accomplished by any act *or omission* which produces, prolongs, or aggravates any sickness or disability." *See* MCM, Part IV, ¶ 40c(2) (emphasis added). Absent a contrary mandate from our superior court, we will not recognize a right that arguably conflicts with the Code.

As we have held, the order to receive the vaccine was lawful. Even assuming *arguendo* that the appellant has a limited right to refuse medical treatment as an active duty servicemember, it would not "trump" an otherwise lawful order. *Cf. Goldman v. Weinberger*, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986)(holding that the right to wear religious headgear did not provide exception to military uniform regulations); *United States v. Marcum*, 60 M.J. 198, 208 (C.A.A.F.2004)(holding that the right to sexual privacy was inapplicable in military context to senior-subordinate relationship). We conclude that requiring the appellant to receive the anthrax vaccine does not violate the appellant's constitutional rights.

### Expert Witness

The appellant also claims that the military judge erred by refusing to order production of Dr. Robert Garry, an expert witness requested by the defense. We disagree.

█ The UCMJ grants an accused "equal opportunity to obtain witnesses ... in accordance with such regulations as the President may prescribe." Art. 46, UCMJ, 10 U.S.C. § 846. The President, in turn, has provided that "each party is entitled to the production of any witness whose testimony on a matter in issue ... would be relevant and necessary." *United States v. Rockwood*, 52 M.J. 98, 104 (C.A.A.F.1999)(quoting R.C.M. 703(b)(1)); *see also* MILITARY RULE OF EVIDENCE 401, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). We review the trial judge's decisions on witness production for an abuse of discretion. *United States v. Miller*, 47 M.J. 352, 359 (C.A.A.F.1997); *United States v. Ruth*, 46 M.J. 1, 3 (C.A.A.F. 1997).

█ Dr. Garry was expected to testify that he recently conducted a study in which some servicemembers had tested positive for squalene antibodies. The appellant conceded, however, that Dr. Garry's study would not prove that the squalene was added to the vaccine. Record at 294. Rather, the appellant wanted to present this evidence and argue a "permissive inference" that the vaccine had been adulterated, thus rendering

the order to receive it unlawful. *Id.* at 298–99.

As discussed previously, lawfulness of an order is purely a question of law for the military judge. *New,* 55 M.J. at 105. Accordingly, Dr. Garry's testimony would not have been properly before the members, but rather before the judge at the motion stage. The military judge had access to Dr. Garry's study and several other documents describing the squalene issue submitted for his consideration on the lawfulness of the order. Therefore, Dr. Garry's testimony would have added little to that process.

Moreover, we do not believe a permissive inference would be appropriate in this case. *Cf. United States v. Campbell,* 50 M.J. 154 (C.A.A.F.1999), *supplemented on reconsideration,* 52 M.J. 386 (C.A.A.F.2000).

As our superior court has held:

In the context of the permissive inference, the military judge has discretion to determine the issue of admissibility by considering whether: (1) the metabolite is naturally produced by the body or any substance other than the drug in question; (2) the permissive inference of knowing use is appropriate in light of the cutoff level, the reported concentration, and other appropriate factors; and (3) the testing methodology is reliable in terms of detecting the presence and quantifying the concentration of the drug or metabolite in the sample.

*United States v. Green,* 55 M.J. 76, 80 (C.A.A.F.2001); *United States v. Hildebrandt,* 60 M.J. 642, 645 (N.M.Ct.Crim.App. 2004). Unlike the metabolites detected in urinalysis testing, squalene is a naturally occurring substance. *See* Appellant's Motion to Attach at App. A and B. It is also found in commercial products such as vitamins and cosmetics. *See* Appellate Exhibit LIX at 2. Given those facts, we hold that a *Campbell*-type permissive inference is unwarranted.

As to the merits of the witness request, we note that Dr. Garry's study specifically states that "the basis for the presence of these [squalene] antibodies remains unclear." *Id.* at 32. Dr. Garry's analysis further states that "our laboratory-based investigations do not establish that squalene itself was added as an adjuvant to any vaccine used" on military personnel. *Id.* at 34. Moreover, the military judge expressed considerable concern as to the timing of the defense request for Dr. Garry. Record at 303, 312. At the time of trial, Dr. Garry was out of the country and unreachable, and the defense did not know for certain when he would return. *Id.* at 323–24. In light of all of these facts, we hold that the military judge did not abuse his discretion by denying the production of Dr. Garry.

## Testing of Sample Vaccine

The appellant also contends that the military judge erred by refusing to order testing of the anthrax vaccine for squalene. We again find no abuse of discretion.

The appellant asked to arrange for an independent test of the anthrax vaccine for squalene. Record at 182–83. The military judge denied that request, largely because such testing would result in further delay. *Id.* at 187–88. In addition, the military judge was convinced that the test would not reveal any squalene. *Id.*

 Under certain circumstances, an accused has the right to independently test evidence. *See generally California v. Trombetta,* 467 U.S. 479, 487, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *United States v. Holt,* 52 M.J. 173 (C.A.A.F.1999); *see also* Art. 46, UCMJ. On the facts of this case, we agree with the military judge's concerns regarding delay and the usefulness of such testing. As the appellant pointed out in his supplemental materials filed with this court, testing performed in the fall of 2000 by the FDA confirmed trace amounts of squalene were present in the anthrax vaccine. Appellant's Motion to Attach at App. A and B. The FDA employed "improved methods of detection" in its testing. *Id.* at App. B. However, there is no indication that a test performed *at the time of the appellant's trial* would have yielded anything other than a negative result. In fact, laboratory testing by Stanford Research International, under contract with the Department of Defense, detected no squalene in a test with detection limits of 140 parts per billion. *See AVIP–Questions and Answers, at http://www.an-*

*thrax.osd.mil/resource/qna/* *qaAll. asp?cID=95* (last visited 21 Apr 2005). The trace amounts of squalene detected by the FDA in the vaccine are less than the concentration normally present in human blood. *Id.* We are convinced that even if the military judge had made a sample of the vaccine available to the defense, the test results would have been negative and thus not helpful to the defense. On these facts, we find no abuse of discretion.

### Conclusion

Accordingly, the finding of guilty and the sentence, as approved by the convening authority, are affirmed.

Chief Judge DORMAN and Judge WAGNER concur.